# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-1079

ELTON GATES and LUSTER NELSON,
individually and on behalf of a class,

*Plaintiffs-Appellees,*

*v.*

B. TOWERY, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 C 2155—**Ruben Castillo**, *Judge.*

ARGUED SEPTEMBER 8, 2005—DECIDED NOVEMBER 29, 2005

Before FLAUM, *Chief Judge*, and EASTERBROOK and
ROVNER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge.* In this interlocutory appeal
under Fed. R. Civ. P. 23(f), the City of Chicago contends
that the district judge should not have certified a class. (We
refer to all defendants as Chicago; the other defendants are
public employees represented by the City.) Certification is
improper, Chicago maintains, because the case is moot;
according to the City, a tender of full compensation to both
representative plaintiffs before a class had been certified
ended the controversy. Although expiration of a representa-
tive's personal claims after certification does not halt the

litigation if other class members have live interests, see *Indianapolis School Commissioners v. Jacobs*, 420 U.S. 128 (1975), pre-certification mootness leaves at most an opportunity for new parties to intervene and carry on. See *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980). As no other champion has appeared, the City contends that the class certification is improper. The district judge, however, concluded that the proffered relief was incomplete and that the original plaintiffs' claims remain justiciable.

A great deal of ink has been spilled in the appellate briefs addressing the question whether plaintiffs' demand for attorneys' fees staves off mootness. Chicago argues that it does not—not only because (in its view) *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001), forecloses an award, but also because a quest for fees does not justify a substantive adjudication made unnecessary by the mootness of the original claim. "The mere fact that continued adjudication would provide a remedy for an injury [the cost of legal services] that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III.*" Diamond v. Charles*, 476 U.S. 54, 70-71 (1986). See also, e.g., *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107-08 (1998); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990). But see *Citizens for a Better Environment v. Steel Co.*, 230 F.3d 923 (7th Cir. 2000) (discussing limits on this principle). How *Buckhannon* applies to situations of the kind presented here is a complex question that we need not address. Nor need we decide whether (and, if so, when) defendants are entitled to pay off representative plaintiffs and decapitate the class, because the City's tender was incomplete and the representatives' personal claims survive. Cf. *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980); *Holstein v. Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994).

Plaintiffs challenge the procedures that Chicago uses for dealing with property that the police seize when making custodial arrests. The police give each person a receipt for whatever has been taken. This receipt says that the person will be notified when the property can be retrieved. At the time Elton Gates and Luster Nelson (the two plaintiffs) were arrested, however, Chicago systematically failed to carry through with that promise. Neither Gates nor Nelson received notice, even though the City does not assert any entitlement to retain the property ($113 in cash taken from Gates and $59 from Nelson). Each inquired at the stationhouse where he had been taken following his arrest; each received a runaround. Police said that the money would be returned only after the arresting officer agreed to do so and signed an appropriate form. This was baloney—but the desk officers' insistence sent Gates and Nelson on futile searches for the arresting officers, who never seemed to be at the stationhouses when they called, and who never signed any release papers.

After Gates and Nelson filed this suit contending that Chicago violates the due process clause of the fourteenth amendment by retaining property to which it has no right, failing to notify the owners, and making return depend on the whim of the arresting officer, Chicago responded that each should have asked the judge in the criminal prosecution to order the money's return (or perhaps filed an independent civil suit against the City)—though this is not what the inventory receipt and its own Police Department told them to do. Chicago has since changed the language on the receipts and may have instructed the police to stop misleading arrestees about how to get their property back. But the plaintiffs maintain that they and the class of other persons whose property is still in Chicago's possession are entitled not only to damages but also to prospective relief notwithstanding the City's new policies.

Plaintiffs sought, for themselves and the class: (a) return of the seized property; (b) prejudgment interest; (c) compensatory damages for any injury attributable to loss of the property's use; and (d) compensation for the value of their time devoted to its retrieval. Counsel for the City sent Gates a check for $113; the cover letter promised that interest would follow. A check for $59 to Nelson (and another promise of interest) came later. Counsel for plaintiffs returned these checks because the City had omitted costs and damages (not to mention attorneys' fees—which we won't mention again). Plaintiffs paid more than $172 (the total of the checks) to commence the litigation; the City's tenders would leave them net losers.

A tender is insufficient unless it makes the plaintiff whole and thus must include the filing fees and other costs under 28 U.S.C. §1920. Cf. Fed. R. Civ. P. 68. And a *promise* of interest tomorrow differs from cash today; Chicago has a history of delay in payment, see *Evans v. Chicago*, 10 F.3d 474 (7th Cir. 1993) (en banc), so a prudent litigant may attach a steep discount to a promise unaccompanied by a check. Especially because the City denies that interest is owed but offers it only as a goodwill gesture.

Then there is the matter of damages. Chicago contends that neither the Constitution nor any statute entitles anyone to damages. That's not correct: a person whose rights under the due process clause have been violated receives nominal damages if he cannot show out-of-pocket loss or other concrete injury. See *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978). The City did not tender even $1 for nominal damages.

Cash on the barrelhead to cover costs, interest, and nominal damages still would not be enough, because plaintiffs want compensatory damages (if not punitive damages). Chicago maintains that they have not established any compensable loss, but this gets the cart before

the horse. A court may resolve such an issue if and only if there is a live controversy. A defendant cannot demand and receive an opinion on the merits of some aspect of plaintiffs' claims, pay off the rest, and then contend the whole suit is moot and must be dismissed, consigning the opinion to advisory status. Cf. *Johnson v. Wattenbarger*, 361 F.3d 991 (7th Cir. 2004). To eliminate the controversy and make a suit moot, the defendant must satisfy the plaintiffs' *demands*; only then does no dispute remain between the parties.

Chicago is unwilling to satisfy plaintiffs' demands. Gates, Nelson, and others similarly situated are entitled to a judge's decision on what if any relief (in addition to return of the seized funds) is appropriate. Perhaps the City is right in thinking that prejudgment interest is all the compensation due and makes nominal damages unavailable because interest represents actual damages from loss of the property's use. Still, this is a question for the district judge to resolve on the merits. A defendant cannot simply assume that its legal position is sound and have the case dismissed because it has tendered everything it *admits* is due. Mootness occurs when no more relief is possible. That point has not been reached.

To say, as Chicago does, that a class may not be certified because no more relief is *proper* is to miss the distinction between being in the right and the absence of a case or controversy. By Chicago's lights, unsuccessful lawsuits should be dismissed as moot (because the defendant owes nothing) rather than decided on the merits. That's not the way things work: A bad theory (whether of liability or of damages) does not undermine federal jurisdiction. See *Bell v. Hood*, 327 U.S. 678 (1946).

It may be that the changes in Chicago's operating procedures would make prospective relief inappropriate—indeed, Gates and Nelson lack standing to seek it, because they do

not contend that they are likely to be arrested again. See *Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Campbell v. Miller*, 373 F.3d 834 (7th Cir. 2004). To the extent that they want an injunction requiring the City to compensate them for past losses, they are on a snipe hunt. There's no such animal, beyond the equitable remedy of restitution—and the City stands ready to hand over the amounts it seized, in order to avoid unjust enrichment. If the constitutional sufficiency of the City's current policies is in dispute, some person adversely affected by them (as Gates and Nelson are not) will have to take up the cause. But Gates and Nelson are adequate representatives of persons financially injured by the City's old policies and practices; there is no good reason why the suit cannot proceed as a class action.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*