**Eduardo ALMARAZ, on behalf of himself and others similarly situated, Plaintiff,**

v.

**Officer HALEAS, Tisa Morris, Philip Cline, City of Chicago, and Unknown Chicago Police Officers, Defendants.**

v.

**Ashley Vonah and Jaclyn Lantz, Respondents.**

**No. 07 C 6134.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 9, 2008.

See also 2008 WL 4547222.

Blake Wolfe Horwitz, Amanda Sunshine Yarusso, Elliot S. Richardson, Rachelle M. Sorg, Sean M. Baker, Tali K. Albukerk, Horwitz, Richardson & Baker, LLC, Chicago, IL, for Plaintiff.

Daniel Francis Gallagher, Dominick L. Lanzito, Lawrence S. Kowalczyk, Mary Elizabeth McClellan, Paul A. O'Grady, Terrence Franklin Guolee, Querrey & Harrow, Ltd., Daniel Matthew Noland, Gregory Lawrence Lacey, Dykema Gos-

sett PLLC, Paul A. Michalik, Terrence Michael Burns, Dykema Gossett Rooks Pitts PLLC, Chicago, IL, for Defendants.

### OPINION AND ORDER

WILLIAM T. HART, District Judge.

█ Plaintiff Eduardo Almaraz alleges that, on January 29, 2007, defendant Chicago police officer Haleas, without probable cause, arrested plaintiff for driving while under the influence. Following a ruling on defendants' motion to dismiss, *see Almaraz v. Haleas,* 2008 WL 4547222 (N.D.Ill. April 25, 2008) (*"Almaraz I"*), the other remaining defendants are the City of Chicago, former Superintendent of Police Philip Cline,[1] and former Chief Administrator of the Police Department's Office of Professional Standards ("OPS") Tisa Morris.[2] The remaining claims are: (I) 42 U.S.C. § 1983 false arrest against Haleas; (II) state law false arrest against Haleas; (III) state law malicious prosecution

against Haleas; (IV) § 1983 liability of the Supervisory Defendants; (V) § 1983 equal protection-class of one against Haleas; (VI) *Monell*[3] (municipal liability) claim against the City; (VII) 745 ILCS 10/9–102 (municipal tort liability) claim against the City; (VIII) state law *respondeat superior* claim against the City; and (IX) class allegations.[4] Presently pending are various discovery motions and the City's motion to bifurcate.[5] Since a ruling on bifurcation will affect the scope of discovery, it will be considered first.

The City moves to bifurcate the *Monell* claim. The City has stipulated to being liable for damages for claims based on Almaraz's arrest as long as a City employee is found liable. The City contends that this should avoid the need to conduct further discovery, motion practice, or a trial on the *Monell* issues, thereby saving substantial time and expense for the parties and the court. The City does not request that the *Monell* claim be dismissed at this

---

**1.** Cline was Superintendent from 2003 until 2007.

**2.** Morris was the Chief Administrator from July 2004 until October 2006. Collectively, Cline and Morris will be referred to as the Supervisory Defendants.

**3.** *Monell v. Department of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**4.** The Complaint proposes the following definitions of two sub-classes: "i. All persons who, at any time on and after two years preceding the filing of this lawsuit until the date of entry of judgment, were detained and/or arrested by [Haleas] and UNKNOWN CHICAGO POLICE OFFICERS as a result of a DUI stop without probable cause. ii. All persons who, at any time on and after one year preceding the filing of this lawsuit until the date of entry of judgment, were prosecuted by [Haleas] and UNKNOWN CHICAGO POLICE OFFICERS based on false testimony, police reports, and/or evidence, *i.e.* maliciously prosecuted, without probable cause." First

Corrected Am. Compl. ¶ 121. For the time being, named plaintiff has deferred seeking class certification on the ground that he first needs discovery from Haleas. Presently, the claims against Haleas are stayed while Haleas faces criminal charges allegedly related to falsifying DUI arrest records of arrestees other than Almaraz. *See* Order dated May 20, 2008 [90].

**5.** As to the motion to bifurcate, plaintiff moves to supplement his response with additional factual material. The additional factual material was obtained in discovery in another case. Those materials are subject to a protective order in the other case that prevents the materials' use in this case. A motion seeking leave to use the materials in the present case is pending in the other case. The additional materials are detailed statistical data and related evidence that plaintiff contends would be part of the proof of municipal liability in this case. Such detailed information is not necessary for determining whether bifurcation of the *Monell* claims is appropriate. The motion to supplement will be denied.

time; it only seeks bifurcation. However, after the other claims are resolved, the City expects that it will be unnecessary to further consider the *Monell* claim and it will be dismissible at that time. If not, bifurcation would permit discovery and resolution of the *Monell* claim after the other claims are resolved. Plaintiff opposes the bifurcation motion on the grounds that the stipulation is too vague to accomplish the stated purpose; resolution of the other claims in plaintiff's favor is unlikely to avoid the need to resolve the *Monell* claims; there is little economy in postponing the *Monell* claims because much of the same discovery and issues arise regarding the claims against the Supervisory Defendants; and plaintiff is entitled to pursue the *Monell* claims because of non-monetary reasons that are not served by proving individual liability.

The City's stipulation is:

### STIPULATIONS TO ENTRY OF JUDGMENT AGAINST DEFENDANT CITY OF CHICAGO

Defendant City of Chicago hereby stipulates to the following:

1. Plaintiff Eduardo Almaraz has filed a Complaint against an individual defendant police officer and other individuals sued in their capacities as municipal officials. Plaintiff's First Corrected Amended Complaint ("Complaint") includes various claims brought under federal and state law.

2. In plaintiff's Complaint, plaintiff claims that the individual defendant Chicago police officer violated his constitutional rights as a direct result of various policies, practices, and customs of the City of Chicago. Hence, plaintiff has brought various *Monell* claims against the City.[fn. omitted] In plaintiff's Complaint, he seeks a judgment against the City for damages caused by the alleged

violation of his rights under the Constitution.

3. Without admitting plaintiff's *Monell* allegations in his Complaint, the City agrees to entry of judgment against the City for compensatory damages and, to the extent allowed by the Court, reasonable attorneys fees pursuant to 42 U.S.C. § 1988, if and only if[,] the finder of fact in this case finds that any City employee violated plaintiff's constitutional rights as alleged in his Complaint.[fn2: Note that this stipulation only applies to Plaintiff, Eduardo Almaraz, individually, and not as a representative of a class. Specifically, this stipulation excludes and does not apply to any member of a class, or to the entire class should the Court later certify this action as a class action.] The entry of any judgment against the City pursuant to this stipulation is accepted by the City only to the extent that the judgment is affirmed after any post-trial motions and/or an appeal if an appeal is taken. Def. Motion to Bifurcate, Exh. B [114–3].

■ Plaintiff contends this stipulation is ambiguous and could provide an empty promise when plaintiff attempts to rely on it. Plaintiff cites a few cases in which the court questioned the clarity of the *Monell* stipulations in those cases. The stipulations in those cases, however, were worded differently. The only specific problem that plaintiff raises regarding the wording of the present stipulation is that it does not address the possibility of an individual defendant being found not liable based on qualified immunity. First, it must be recognized how this stipulation would be construed if a dispute arose. It is not a joint stipulation nor a contract that has been accepted by plaintiff. But it is still a legally binding, document drafted by the City. Ambiguities would be resolved against the City as the drafter. *See Wil-*

*helm–Munoz v. Millard Refrigerated Serv., Inc.,* 2008 WL 4369328 *2 (N.D.Ill. Sept. 23, 2008). *Cf. Harbor Motor Co. v. Arnell Chevrolet–Geo, Inc.,* 265 F.3d 638, 647–48 (7th Cir.2001) (offer of judgment construed against drafter). Also, the stipulation would be construed in light of the circumstances under which it was entered. Thus, the stipulation would be construed in light of the understanding that the City was attempting to avoid litigating *Monell* issues and instead concede liability if one of its employee's is liable. For example, the City concedes that it would be liable under the stipulation if an individual defendant is found to have committed a constitutional violation, but is not liable for damages based on qualified immunity. Other than a settlement with an individual defendant, it will be strongly presumed that liability on the part of an individual defendant correlates to liability of the City under the stipulation.

There are, however, potential ambiguities (or possibly intentional omissions) in the stipulation that will be clarified now. The stipulation refers to findings of liability by the finder of fact. The terms of the stipulation will also be applied if an individual is held liable on a motion for summary judgment or any other court procedure not involving a finder of fact. The only exception would be liability based on a settlement to which the City is not a party, or a non-court procedure such as arbitration or mediation unless the City agrees to be bound by such proceedings. If an individual defendant is found or held liable, but then settles with plaintiff, the City will be bound by the finding or holding of liability (even if the settlement provides for vacating that finding or holding or contains a denial of liability) unless the City can show that the individual defendant would have succeeded at overturning the finding or holding. Last, the reference in ¶ 3 of the stipulation to post-trial motions or appeals of a judgment is understood to refer to appeals or post-trial motions as to judgments or findings/holdings of liability against an individual defendant. This is not a reference to an appeal or post-trial motion regarding a judgment entered against the City. These clarifications will be considered to be incorporated in the stipulation, unless, within two weeks after the date of today's order, the City presents a motion seeking to reject or modify any or all of the clarifications. Any ruling on such a motion could also result in the modification of other aspects of today's ruling.

■ Ordinarily, this bench does not bifurcate cases (the usual request being to bifurcate liability and damages) because the bench's experience is that the case will not be resolved until after discovery as to all issues is substantially completed with bifurcation only causing delay. The present situation, however, is different. Here, because of the stipulation, there is a good chance that the case will be fully resolved without ever having to complete discovery on the *Monell* issues or any related summary judgment or trial issues. If the individual defendants are found or held not liable, then there would most likely be no need to address the *Monell* issues. As indicated above, dismissal of the individual defendants based on qualified immunity would be a ground inapplicable to the City, but such a ruling would probably require first resolving the question of whether the individual defendants committed a constitutional violation which would be a sufficient basis for holding the City liable on the stipulation. Also, this does not appear to be a case that will involve the type of legal issues that could result in a qualified immunity defense. Although not expressly alleged in the First Amended Complaint, it is clear from representations and arguments made by plaintiff that his accu-

sation is that Haleas fabricates evidence, that is, Haleas falsely puts in his police reports or falsely testifies in court that arrestees failed field sobriety tests or engaged in other behavior indicative of being intoxicated. That is not the type of conduct for which qualified immunity would apply. Also, it is well established that a supervisor may be held liable for knowingly allowing or acting in reckless disregard of constitutional violations by subordinates. *See Almaraz I,* 2008 WL 4547222 at *6 (citing Seventh Circuit cases).[6]

As will be addressed below, there is a difference between supervisory liability and *Monell* liability. So it is possible that the Supervisory Defendants will avoid liability on grounds inapplicable to the City— for example, the individual supervisor's lack of personal involvement or lack of personal knowledge. If raised on summary judgment, the court would first address the question of whether Haleas committed a false arrest and, if at trial, the court would have the jury provide appropriate special verdicts. And even if the Supervisory Defendants avoided liability without resolving all the issues pertinent to the City's liability, the pertinent issues likely could not be avoided in resolving the merits of the claims against Haleas. There is, of course, the possibility that merits of the claims against Haleas will not be reached because of a separate settlement with Haleas. Most likely, however, if all the claims against the individual defendants are dismissed, it will be because the liability issues pertinent to the City will have been resolved as to at least one of the individual defendants or a settlement will have been reached that involves the City as well.

On the other side, findings/holdings of liability against one or more of the individ-

ual defendants are likely to resolve the liability issues pertinent to the City. If the case goes to trial, the verdict form would require that the jury identify the claims on which liability is found.

Plaintiff contends that, even if the City is liable based on the stipulation and a finding of liability against an individual defendant, plaintiff would still want to pursue his *Monell* claim so there is no economy in bifurcating the case. In that circumstance, however, plaintiff would not have a basis for continuing to pursue his *Monell* claim. Plaintiff contends he would still want a finding specifically on his *Monell* claim as a means of preventing future violations by the City. That a liability finding against the City specifically based on *Monell* would be a greater deterrent than a judgment of liability based on the stipulation is a questionable assumption. But even assuming it is a greater deterrent, plaintiff has no right to seek relief preventing future violations. Just as plaintiff would lack standing if he sought injunctive relief, *see Gates v. Towery,* 430 F.3d 429, 432 (7th Cir.2005), it is inappropriate to allow him to pursue a particular theory solely based on its possible deterrent value when all the actual relief he can be entitled to receive has already been determined. Also, any moral or psychic satisfaction that plaintiff may derive from also showing the City would be liable based on *Monell* is not even a form of relief, *see Petersen v. Gibson,* 372 F.3d 862, 865 (7th Cir.2004), let alone relief that plaintiff may continue to seek after all possible compensatory relief has been granted. It is true that plaintiff could be entitled to nominal damages even if he can show no compensatory damages resulting from a violation of his constitutional rights. *See Gates,* 430 F.3d at 431. But *Monell* is not proof of a constitutional

---

**6.** Plaintiff also brings an equal protection "class of one" claim. The false arrest claim, though, is his primary claim so that will be the focus of the discussion.

violation. The constitutional violation alleged by plaintiff is false arrest. If it is proven that Haleas falsely arrested plaintiff, then the City stipulates that it is liable for such violations as well and plaintiff is entitled to appropriate damages for being falsely arrested. *Monell* would only be an alternative means of holding the City liable for the false arrest and would not increase or decrease the damages—nominal or compensatory—that plaintiff is entitled to receive for his injuries.

■ Plaintiff's other contention is that bifurcation does not represent any economy because the same discovery and proofs will be necessary for the claims against the Supervisory Defendants.[7] That, however, is not true. The focus of the Supervisory Defendants' liability is their own personal knowledge of the policies and practices that affected plaintiff and whether they were personally responsible for those policies and practices. *See Almaraz I,* 2008 WL 4547222 at *6. The City's liability, however, is not limited to the Supervisory Defendants' personal knowledge and participation. Instead the focus is on whether plaintiff's deprivation is caused by an express policy, a widespread practice or custom, or the deliberate act of a policymaking official. *Ienco v. City of Chicago,* 286 F.3d 994, 998 (7th Cir.2002). The Police Superintendent and OPS Chief Administrator are not policymaking officials of the City, *Latuszkin v. City of Chicago,* 250 F.3d 502, 505 (7th Cir.2001), so any liability of the City based on the act of a policymaking official would be distinct from the Supervisory Defendants' liability. In any event, as alleged in the First Amended Complaint, the alleged basis for the City's *Monell* liability are widespread customs or practices of the City's Police Department. Those practices are not limited to ones of which the Supervisory Defendants had knowledge. Discovery as to the *Monell* issue, therefore, is likely to be much broader than the discovery otherwise required.

■ For the reasons discussed, bifurcating the *Monell* issue is likely to save substantial litigation time and expenses both initially and, in the long run, because it is also likely to result in there ultimately being no need to conduct discovery or resolve further issues regarding *Monell.* The latter issue, however, is not conclusively resolved at this time. Bifurcation is being granted, not dismissal of the *Monell* claims. After liability is resolved regarding Haleas and the Supervisory Defendants, the effect of the stipulation will be finally determined as well as the question of whether the *Monell* issues must be further addressed. In the meantime, the motion for bifurcation is granted and proceedings on the *Monell* issue are stayed until further order of court.

In light of the bifurcation ruling, plaintiff's motion to allow BrainMaker discovery and to amend the complaint is readily resolved. The BrainMaker program was phased out prior to the Supervisory Defendants becoming Police Superintendent and Chief Administrator. Therefore, details about that program are unlikely to be relevant to the claims against the Supervisory Defendants. It is also doubtful that a program phased out in 1996 is relevant to an arrest in 2007. However, since action is presently stayed regarding *Monell,* it need not be decided if the requested BrainMaker discovery would be relevant to the *Monell* allegations in this case. If

---

7. Plaintiff is seeking punitive damages from the Supervisory Defendants. No such damages may be obtained from the City. Therefore, even if Haleas is found to have committed a constitutional violation and the City deemed liable pursuant to the stipulation, there is additional relief that can potentially be obtained from the Supervisory Defendants.

*Monell* discovery is later necessary, it may be appropriate to resolve the issue at that time. Presently, plaintiff's motion will be denied without prejudice.

The pending state court criminal charges against Haleas include charges related to an April 8, 2005 DUI arrest. On that date, two Cook County Assistant State's Attorneys ("ASA") were on a ride-along with Haleas as part of their training. Based on their observations, they reported allegedly improper conduct on the part of Haleas. This report led to an investigation that ultimately resulted in Haleas's criminal indictment. The two ASAs are not prosecuting the case against Haleas, but are expected to be witnesses in the criminal prosecution. Plaintiff represents he has already received all or most of the documents related to the ride-along. He has noticed the two ASAs for depositions. The two ASAs move to stay their depositions until March 2009.[8] Based on information provided by the prosecutor of the criminal case, the two ASAs represent that there is a continuing investigation of Haleas that may result in additional charges. Any additional charges would be brought by no later than March 2009. It is possible, but not necessarily likely, that additional information or grand jury testimony will be obtained from the two ASAs related to possible additional charges. The two ASAs invoke an investigatory privilege so as not to interfere with the continuing criminal investigation. At the behest of the prosecutor, it is requested that the two ASAs not be deposed until after additional charges are either brought or it is decided there will be no additional charges. It is also represented that Haleas is not expected to go to trial in the criminal case until after March 2009 and there is no request to postpone the depositions until after the criminal trial.

In his written response to the motion, plaintiff represents that the depositions will provide testimony pertinent to proving *Monell.* At the September 30, 2008 status hearing, plaintiff represented that the testimony would also be relevant to Haleas's testimony about plaintiff's arrest because it is evidence of Haleas's lack of truthfulness admissible under Fed.R.Evid. 608(b). That Rule, however, does not permit proof by extrinsic evidence, only questioning of Haleas himself. Plaintiff also contends the ASAs' testimony may provide evidence of other bad acts admissible under Fed. R.Evid. 404(b). Neither the deponents nor any party contend the depositions would only provide irrelevant evidence.

■ Based on the representations of the parties, it is not very likely that deposing the two ASAs will interfere with the criminal prosecution. Nevertheless, there is no urgency to depose the two ASAs. As previously ruled, no discovery is presently being permitted regarding *Monell.* Currently, the only possible relevance of the ASAs' testimony is to Haleas's testimony.[9] Since discovery from Haleas is stayed until after his criminal trial, there is no urgency to now depose the ASAs. Therefore, regardless of the applicability of any privilege, discretion will be exercised to grant the ASAs'/criminal prosecutor's request for a delay so as to avoid any limited possibility

---

8. The initial motion was to quash or stay. At the September 30, 2008 status hearing in this case, the deponents limited their request to a stay until March 2009. They did not specify a date in March.

9. Plaintiff does not contend their testimony would be directly relevant to the knowledge or responsibility of the Supervisory Defendants. There is no contention that either Supervisory Defendant had direct contact with either of the ASAs. To the extent the Supervisory Defendants were aware of the ASAs' report about the April 8, 2005 incident, it likely would have been through documents (which plaintiff represents he already has) or oral reports from intermediaries.

of interfering with the criminal proceeding or investigation. The depositions of the two ASAs are stayed until after March 9, 2009. If the possibility of additional charges being brought against Haleas is resolved prior to that date, the criminal prosecutor should promptly inform the two ASAs and Haleas's counsel and it is expected that the ASAs and the parties will cooperate in determining a mutually agreeable deposition date.

Under advisement is plaintiff's motion to compel [105]. In light of today's ruling narrowing the current scope of discovery, the parties shall promptly meet in an attempt to resolve any remaining disputes regarding plaintiff's request to produce and interrogatories. If good faith efforts fail to resolve all disputes, plaintiff must file a new motion to compel. Before bringing such a motion, plaintiff must allow sufficient time for the parties' efforts to reach a resolution. In the meantime, the motion to compel will be denied without prejudice.

IT IS THEREFORE ORDERED that plaintiff's motion to submit additional factual material [145] is denied. Defendant City of Chicago's motion to bifurcate [114] is granted in part and denied in part. *Monell* issues are bifurcated from other issues in the case and stayed pending further order of the court. Plaintiff's motions to compel [106], for discovery regarding BrainMaker [108], and to amend [108], are denied without prejudice. Respondents' motion to quash or stay [122] is granted in part and denied in part. Depositions of Ashley Vonah and Jaclyn Lantz are stayed until after March 9, 2009. A status hearing will be held on November 5, 2008 at 11:00 a.m. at which time a new discovery plan will be considered.