In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1261

RASHAD B. SWANIGAN,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 4780 — **Virginia M. Kendall**, *Judge.*

ARGUED MAY 30, 2013 — DECIDED JANUARY 9, 2015

Before SYKES and HAMILTON, *Circuit Judges*, and
STADTMUELLER, *District Judge.*[*]

[*] Of the United States District Court for the Eastern District of Wisconsin, sitting by designation.

SYKES, *Circuit Judge*. Rashad Swanigan was arrested and jailed for more than 50 hours by Chicago police officers who mistakenly thought he was a serial bank robber known as the Hard Hat Bandit. Following his release, Swanigan filed suit against a number of individual officers and the City alleging various constitutional violations under 42 U.S.C. § 1983 and several state-law claims. After some procedural maneuvering, Swanigan's *Monell* policy-or-practice claim against the City became a separate lawsuit, which was consolidated before the same judge and stayed while the suit against the individual officers proceeded. A jury found for Swanigan against seven individual officers on one of the constitutional claims, awarding $60,000 in damages.

Swanigan then turned his attention back to the *Monell* suit. He moved to lift the stay and advised the court that he intended to amend his complaint in light of the jury's verdict. The judge interpreted the motion as a waiver of all but two of Swanigan's theories of *Monell* liability and held that the two remaining aspects of the claim were not justiciable. This ruling was based on the City's promise to indemnify its officers in the first suit and to pay nominal damages of $1 for any *Monell* liability. The judge also held—sua sponte—that one of the two *Monell* claims failed to state a claim on which relief could be granted. For these reasons, the judge denied Swanigan's motion to lift the stay and dismissed the *Monell* suit in its entirety. Swanigan appealed.

Several procedural missteps require a remand here. First, the judge wrongly assumed that Swanigan was waiving all but two theories of *Monell* liability and dismissed the entire suit

based on that mistaken premise. Moreover, under Rule15(a)(1)(B) of the Federal Rules of Civil Procedure, Swanigan was entitled to amend his complaint within 21 days of a responsive pleading or motion to dismiss, which would have been the next step after the stay was lifted, as it should have been. And a sua sponte dismissal for failure to state a claim—a merits adjudication—is improper.

Swanigan's *Monell* suit may indeed face some jurisdictional and merits hurdles, but the judge jumped the gun in dismissing it. The case was stayed in its infancy while the claims against the individual officers proceeded, and Swanigan was entitled to revive it and amend his complaint to try to plead a justiciable claim once the court and the parties returned to it.

## I. Background

On the afternoon of August 22, 2006, Chicago police officers Robert Trotter and Thomas Muehlfelder were patrolling the city's north side and saw a man later identified as Swanigan standing outside a bank on Elston Avenue and Pulaski Road. The officers had been told to be on the lookout for a serial bank robber known as the Hard Hat Bandit, who was wanted for robbing several banks while wearing a yellow hard hat. Swanigan wasn't wearing a hard hat, but the officers believed that he matched the general description of the Hard Hat Bandit. They watched as he entered the passenger side of a car. A computer check of the car's license-plate number revealed that the car's registration was suspended based on an insurance violation, so the officers approached Swanigan and asked for his insurance card.

Swanigan told the officers that the car was insured but could not produce proof of insurance. So the officers arrested him and searched the vehicle. In the back seat they discovered several hard hats (one was yellow) and also a knife. Thinking that they'd just cracked the Hard Hat Bandit case, the officers sought and received approval to book Swanigan for traffic violations and for unlawful use of a weapon. As it turned out, however, Swanigan was not the Hard Hat Bandit but an innocent construction worker who was at the bank cashing some checks.

The officers wanted to investigate whether Swanigan was responsible for a recent robbery of a Popeye's Chicken restaurant that was linked to the Hard Hat Bandit. Swanigan would have been released fairly quickly on the offenses for which he was arrested, so the officers put a "hold" on him to ensure that they would have time to investigate him for the robberies they suspected him of committing. The hold prevented his release from custody and also delayed his appearance in court for a probable-cause determination.

Over the course of the next day, Swanigan was placed in lineups to determine if any witnesses could implicate him in the Popeye's Chicken robbery. A few witnesses initially identified Swanigan as the robber. Swanigan claimed that he was placed in other lineups and treated poorly throughout his detention. He spent another night in jail.

On August 24, 2006, an Assistant State's Attorney reviewed Swanigan's case. She interviewed the witnesses in the Popeye's Chicken robbery and learned that their identifications were shaky; one retracted the identification altogether. The Assistant

State's Attorney declined to charge Swanigan with the Popeye's Chicken robbery, and he was released from custody that evening. All told, he had been in custody for about 51 hours with no judicial determination of probable cause.

After Swanigan's release, the police department's Case Supplementary Report for the Popeye's Chicken robbery was marked "Cleared—closed other exceptional." According to Swanigan, that designation—along with the accompanying narrative—identifies him as the robber, states that employees of the restaurant picked him out of a lineup, and indicates that the police closed the investigation because the prosecutor refused to approve charges, due in part to unreliable witness identifications. Swanigan contends that the report is available to law-enforcement personnel and the general public and causes him harm because it misidentifies him as the robber.

In October 2006 Chicago police apprehended the real Hard Hat Bandit. The traffic and weapons charges against Swanigan were dropped.

Swanigan filed suit in the Northern District of Illinois alleging constitutional claims under § 1983 and several state-law causes of action stemming from his arrest and extended detention. After two amendments, the complaint alleged nine counts against 20 named police officers, an unknown number of unnamed police officers, and the City of Chicago. Swanigan moved to amend his complaint a third time to add a § 1983 policy-or-practice claim against the City under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The district court disallowed the

amendment, reasoning that it represented a significant shift in focus too late in discovery.

Swanigan then filed a second lawsuit against the City containing the *Monell* claim that he'd tried unsuccessfully to add to the first. He alleged in the second suit that the constitutional violations stemming from his arrest and detention were caused by one or more of nine city policies, customs, or practices. The *Monell* suit also alleged that the officers had failed to pursue "obvious investigative techniques" that would have led to his earlier release from custody, and that the City failed to adequately train, supervise, and discipline its officers.

The new lawsuit was initially assigned to another judge. The City moved pursuant to Rule 42(a) of the Federal Rules of Civil Procedure and Local Rule 40.4 to reassign and "consolidate" the second suit before the judge who was hearing the first case. That motion was granted, although the cases maintained separate case numbers and dockets. The judge stayed proceedings in the *Monell* suit until the conclusion of the case against the individual officers. In the same order, the judge also directed the City to inform the court "whether it will enter into [a] … stipulation" to indemnify the officers for any award of compensatory damages and pay nominal damages of $1 if the officers were found liable to the plaintiff.

More specifically, the "stipulation"—proposed and prepared by the judge—was titled "Defendant City of Chicago'[s] Certification of Indemnification" and provided that

1.  The City of Chicago agrees to indemnify the individual defendant Chicago police officers

for any judgment of compensatory damages that may be entered against them in this case.

2. If [Swanigan] prevails in his section 1983 action against individual defendant Chicago police officers, the City of Chicago agrees to indemnify the individual defendants for reasonable attorney fees and costs that [Swanigan] may be entitled to recover pursuant to 42 U.S.C. § 1988. This agreement is exclusive of such fees and costs that may be attributable to an award of punitive damages against the individual defendants.

3. The City also undertakes to pay nominal damages (not to exceed one dollar) if any compensatory damage award is entered against the individual defendants.

A week later the court entered a minute order stating that "[t]he City informs the Court that it has accepted the stipulation to indemnify the defendant officers."

The first suit proceeded to motions for summary judgment. The judge granted summary judgment in favor of the defendants on all counts except for two of Swanigan's claims under § 1983. On the surviving counts, the judge (1) denied the officers' motion for summary judgment on Swanigan's claim for false arrest; (2) found four officers liable on the claim

related to Swanigan's extended detention;[1] and (3) held that the liability of four other officers on the extended-detention claim would be determined at trial, as would the issue of damages.

After a five-day trial, a jury rejected Swanigan's claim for false arrest and found three more officers liable for Swanigan's extended detention. The latter finding meant that Swanigan prevailed against seven individual officers on his claim for an unlawfully extended detention. The jury awarded Swanigan $60,000 in compensatory damages and no punitive damages, and the court later awarded Swanigan his costs and attorney's fees as the prevailing party.

As posttrial proceedings were underway in the first case, Swanigan turned his attention back to the *Monell* suit. He moved to lift the stay and explained that he intended to amend his complaint "in order to narrow the issues, consistent with the jury verdict in [the first suit]." He also said he wanted to "amend the remedies portion of his complaint in order to clarify that, in addition to damages, nominal or otherwise, he is also seeking declaratory and/or injunctive relief."

---

[1] *See Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) (requiring judicial determinations of probable cause to be "prompt"); *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (holding that as a general matter, "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest" will comply with *Gerstein*'s promptness requirement); *Lopez v. City of Chicago*, 464 F.3d 711, 714 (7th Cir. 2006) (providing that delays taking longer than 48 hours must be justified by the existence of emergency or other extraordinary circumstances).

The City opposed the motion to lift the stay. Attached as an "exhibit" to its memorandum in opposition to the motion was a proposed "Certification of Entry of Judgment" stating in relevant part:

> 3. Without admitting [Swanigan's] allegations of section 1983 municipal liability, the City of Chicago agrees to entry of judgment against the City for compensatory damages. The City specifically waives its right under *Monell v. New York City Dept. of Social Services* not to be held liable in damages under section 1983 without proof that the City by its "policy, custom or practice," and with the requisite degree of culpability, caused the alleged constitutional violation. …

> 4. Further, the City of Chicago agrees to indemnify [the individual defendants] for the judgment of compensatory damages that was entered against them in this case. The City of Chicago also agrees to indemnify these [d]efendants for reasonable attorney's fees and costs to which [Swanigan] may be entitled pursuant to 42 U.S.C. § 1988. This indemnification agreement is both unconditional and irrevocable.

> 5. Additionally, the City of Chicago agrees to pay nominal damages (not to exceed one dollar), as [Swanigan] has proven a violation of a substantive constitutional right and [an] actual compensable injury.

The proposed Certification thus largely duplicated the court-drafted "stipulation" to which the City had agreed in principle in the first suit; the main difference was that the City agreed to entry of judgment against it, whereas the stipulation had involved only an agreement to indemnify the officers and pay nominal damages. The City asked the court to deny the motion to lift the stay, accept the proposed Certification, and dismiss the case for lack of a justiciable case or controversy.

Swanigan filed a reply arguing that the stay should be lifted to permit the case to proceed in the ordinary course and reiterating that he intended to file an amended complaint. He specifically flagged two of the 11 possible theories of liability identified in his original complaint: (1) the officers acted pursuant to a city policy allowing them to "delay release of a detainee arrested without a warrant solely for the purpose of investigating the detainee for uncharged and unrelated crimes," even if the delay extends past the next court call at which the suspect could receive a probable-cause determination; and (2) the officers acted pursuant to a city policy allowing them to mark a case report as "cleared closed," a designation that listed the suspect as an identified criminal offender even when the State's Attorney refused to prosecute the case. (We'll refer to these as the "hold claim" and the "cleared-closed claim.") After briefly touching on the potential viability of these theories, Swanigan again asked that "the stay of his *Monell* claim be lifted in order that his case may proceed."

The judge denied the motion to lift the stay and dismissed the case in its entirety.[2] The judge concluded that based on the City's Certification, Swanigan would receive in the first suit all the monetary relief he could recover on the hold claim or the cleared-closed claim, which meant that any claim for damages in the *Monell* suit was moot. The judge also concluded that Swanigan lacked standing to pursue injunctive relief on either the hold claim or the cleared-closed claim. For these reasons— mootness and lack of standing—the judge held that neither claim presented a justiciable case or controversy. In addition, the judge rejected Swanigan's challenge to the cleared-closed policy for failure to state a claim—an argument that the City never made.

Although Swanigan gave no indication that he was waiving any of his other asserted grounds for *Monell* liability, the judge treated the resolution of these two claims as dispositive of the

---

[2] The court's order does not specify whether the dismissal was with or without prejudice. As we explain in the text, to the extent that the judge held that the hold claim and the cleared-closed claim were jurisdictionally defective, the dismissal was without prejudice. *See* FED. R. CIV. P. 41(b) ("Unless the dismissal order states otherwise, … any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."). But the judge also held that the cleared-closed claim failed to state a claim on which relief can be granted, so to that extent the dismissal was with prejudice. Either way, the court's order was "conclusive in practical effect," meaning that our jurisdiction under 28 U.S.C. § 1291 is secure. *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 507 (7th Cir. 2009) (internal quotation marks omitted).

entire suit and entered final judgment dismissing the case. Swanigan appealed.

## II. Discussion

Multiple procedural errors infect this judgment. First, the dismissal of Swanigan's cleared-closed claim for failure to state a claim under Rule 12(b)(6) was procedurally defective. The City's response in opposition to Swanigan's motion to lift the stay made no mention of Rule 12(b)(6), did not address the relevant pleading or substantive legal standards, and did not discuss the plausibility of the allegations in Swanigan's complaint. As the City itself states, "[i]n responding to Swanigan's motion to lift the stay, the City clearly requested dismissal of his *Monell* claims based upon lack of Article III standing," not based on Swanigan's failure to state a claim.

A district court cannot sua sponte dismiss a complaint on the merits without notifying the parties and allowing the plaintiff an opportunity either to cure the defect in the complaint or at least a chance to defend the merits of his claim. *See, e.g.*, *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765–66 (7th Cir. 2006). Here, the judge gave no indication that she was going to evaluate whether any aspect of Swanigan's *Monell* claim held up under Rule 12(b)(6) scrutiny. The court's abrupt, sua sponte merits dismissal is even more problematic given Swanigan's stated desire to amend his complaint. At the very least, the judge should not have addressed and dismissed the cleared-closed claim for failure to state a claim.

The jurisdictional dismissal was also procedurally irregular. The *Monell* case was frozen in time while the parties litigated the claims against the officers in the earlier-filed case. When that case concluded, the court had before it a simple motion to lift the stay in the *Monell* suit, not a Rule 12(b)(1) motion to dismiss the suit for lack of subject-matter jurisdiction. It's true that in opposing Swanigan's motion to lift the stay, the City raised justiciability arguments based on mootness and lack of standing, both of which affect a federal court's jurisdiction. And the judge credited these arguments, holding that the City's proposed Certification mooted any *Monell* claim for damages and that Swanigan lacked standing to pursue injunctive relief on his challenge to the City's hold policy and cleared-closed policy. Based on these rulings, the judge dismissed the case in its entirety.

There are several problems with this approach. First, the court's mootness holding treats the Certification as though it were a Rule 68 offer of judgment. *See* FED. R. CIV. P. 68(a) (providing that a defendant may "offer to allow judgment on specified terms, with the costs then accrued," and that acceptance of such an offer can lead to termination of the lawsuit). It was not.

In this circuit an unaccepted Rule 68 offer that meets or exceeds all the relief the plaintiff has demanded eliminates any remaining case or controversy. *See, e.g.*, *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2011) ("'Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge that loses outright, under Fed. R. Civ. P. 12(b)(1),

because he has no remaining stake.'" (quoting *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991)); *Thorogood v. Sears, Roebuck & Co.*, 595 F.3d 750, 752 (7th Cir. 2010) ("The offer exceeded the amount in controversy and so the case was moot."); *Greisz v. Household Bank (Ill.)*, 176 F.3d 1012, 1015 (7th Cir. 1999); *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 878 (7th Cir. 1987). The reasoning behind these cases is straightforward: "You cannot persist in suing after you've won."[3] *Greisz*, 176 F.3d at 1015.

By the same token, however, "the rejection of an offer of less than the complete relief sought by a suit does not prove that there is no dispute between the litigants." *Id.* The clear import of our caselaw in this area is that a Rule 68 offer of judgment must *completely* satisfy the plaintiff's demand in

---

[3] The circuits are split on whether an unaccepted Rule 68 offer moots the plaintiff's case. *See Scott v. Westlake Servs. LLC*, 740 F.3d 1124, 1126 n.1 (7th Cir. 2014) (explaining the split). In *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), the Supreme Court seemed poised to resolve the split but in the end decided the case on narrower grounds. *See id.* at 1532; *see also Scott*, 740 F.3d at 1126 n.1. Four Justices dissented in *Genesis Healthcare*, sharply criticizing our approach. *See Genesis Healthcare*, 133 S. Ct. at 1533–34 (Kagan, J., dissenting) ("An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect. … So a friendly suggestion to the Third Circuit: Rethink your mootness-by-unaccepted-offer theory. And a note to all other courts of appeals: Don't try this at home."). Based on Justice Kagan's dissent, we noted in *Scott* that "there are reasons to question our approach to the problem." 740 F.3d at 1126 n.1. Here, as in *Scott*, the parties do not question our Rule 68 precedent, so we do not address it further. *See also Smith v. Greystone Alliance, LLC*, 772 F.3d 448, 450 (7th Cir. 2014) (noting the views of the dissenting Justices in *Genesis Healthcare* but deferring the issue).

order to eliminate a justiciable controversy. *See, e.g., Smith v. Greystone Alliance, LLC*, 772 F.3d 448, 450 (7th Cir. 2014) (explaining that a jurisdictional dismissal is proper only if the defendant satisfies the plaintiff's entire demand); *Scott v. Westlake Servs. LLC*, 740 F.3d 1124, 1126 (7th Cir. 2014) ("[I]f the defendant offers to pay only what it thinks might be due, the offer does not render the plaintiff's case moot. … The plaintiff's stake is negated only if no additional relief is possible.").

An initial difficulty with treating the Certification as an offer of judgment under Rule 68 is that it wasn't styled as a Rule 68 offer, and the City actually denies that it functioned as one. On this point the City's position has fluctuated. At oral argument the City stated that the district court construed the Certification as "a Rule 68 [offer of judgment] in substance." The City retracted that statement in a Rule 28(j) letter, explaining that it routinely agrees to stipulations like this one and that "[d]istrict court judges prefer various titles for this document." The City continued: "While these proposals have features in common with Rule 68 offers of judgment, they provide an independent basis for the court to resolve the case in circumstances where a Rule 68 offer might not be appropriate." Without further elaboration, the City asserted in its Rule 28(j) letter that these "effort[s] to streamline the litigation" have "ample support" in Rules 1 and 42 of the Federal Rules of Civil Procedure.[4]

---

[4] Rule 1 provides that the Rules of Civil Procedure "should be construed … to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1. Rule 42(a) governs consolidation of cases. FED. R. CIV.

(continued...)

This new justification for dismissing Swanigan's case comes far too late and is so woefully undeveloped that it cannot be taken seriously. We decline to consider it.

Even assuming that the district court indeed construed the Certification as a Rule 68 offer "in substance," the court erred in holding that it mooted Swanigan's case. Municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief."[5] *Monell*, 436 U.S. at 690. Swanigan sought the full range of remedies, but the Certification offered only monetary relief in the form of a promise to indemnify the officers for the judgment in the first suit and pay nominal damages of $1 for any *Monell* liability.[6]

The City acknowledges the point but argues that the Certification offered Swanigan all the relief that he was *entitled to* on the hold claim and the cleared-closed claim. But we repeat: "[T]he defendant must satisfy the plaintiffs' *demands*; only then does no dispute remain between the parties." *Gates v.*

---

[4] (...continued)
P. 42(a) (authorizing the district court to consolidate actions that "involve a common question of law or fact" and "issue any other orders" in consolidated cases "to avoid unnecessary cost or delay").

[5] Though not for punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

[6] Swanigan's original complaint requested damages and "such other and further relief as this Court may deem just and proper," but he explained in his motion to lift the stay that he intended to clarify in an amended complaint that he was "also seeking declaratory and/or injunctive relief."

*Towery*, 430 F.3d 429, 432 (7th Cir. 2005). The City did not do that here. As we explained in *Scott*:

> [I]f the defendant offers to pay only what it thinks might be due, the offer does not render the plaintiff's case moot. *Gates v. Towery*, 430 F.3d 429, 431–32 (7th Cir. 2005). In that situation, the plaintiff still has a stake in the action because she may obtain additional relief if she prevails. The plaintiff's stake is negated only if no additional relief is possible. *Id.* To hold otherwise would imply that any reasonable settlement offer moots the plaintiff's case or that long-shot claims are moot rather than unlikely to succeed. *Id.* at 432. "That's not the way things work: A bad theory (whether of liability or of damages) does not undermine federal jurisdiction." *Id.*

740 F.3d at 1126–27; *see also Smith*, 772 F.3d at 450 ("A defendant cannot have the suit dismissed by making an offer limited to what it concedes the plaintiff is entitled to receive, even if the defendant happens to be right about its view of the plaintiff's entitlement … .").

This highlights two more procedural irregularities in the district court's order. After concluding that the Certification mooted the *Monell* claim for monetary relief, the judge held that Swanigan lacked standing to seek an injunctive remedy against either the hold policy or the cleared-closed policy and on that basis held that the entire case was nonjusticiable.

This ruling wrongly assumed that Swanigan had waived all other possible theories of *Monell* liability. He clearly did not. All he said was that he wanted to narrow the *Monell* suit in light of the verdict in the earlier suit, and he mentioned the hold policy and the cleared-closed policy to illustrate potentially viable claims that he might pursue. But he gave no indication that he was waiving any other aspects of his *Monell* claim. To the contrary, he reiterated his intention to amend his complaint to focus and refine the claim.

The procedural challenges in this case stem in part from the complex development of § 1983 doctrine from *Monroe v. Pape*, 365 U.S. 167, 187 (1961) (municipalities not liable under § 1983), to *Monell*, 436 U.S. at 694–95 (municipalities may be liable under § 1983 for injuries caused by municipal policy, custom, or practice), to the establishment of the qualified-immunity defense for individual defendants, *see, e.g.*, *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

If a § 1983 plaintiff seeks only monetary relief, and if a municipal defendant is willing (or required) to indemnify individual defendants for compensatory damages as well as an award of attorney's fees and costs, a *Monell* claim against the municipality will offer a prevailing plaintiff no additional remedy (aside, perhaps, from nominal damages). In such cases there is no need for the parties to spend time and money litigating a *Monell* claim. If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations. *See, e.g.*, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Accordingly, the judge's decision to

stay the *Monell* suit while the claims against the individual officers were litigated to judgment was sensible, especially in light of the volume of civil-rights litigation that district courts must manage.

In some civil-rights cases, however, a verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim. *See, e.g., Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2009). In still other cases, the plaintiff may want an injunction against future constitutional violations or some other equitable remedy, and he may be willing to invest the time and effort needed to prove his entitlement to that relief. In such cases, and this is one, the plaintiff is entitled to try to prove his *Monell* claim. Some cases have remedial import beyond the individual plaintiff's claim for monetary damages, and § 1983 provides a vehicle for obtaining other judicial relief against governmental policies that violate constitutional rights. *See generally* David F. Hamilton, *The Importance and Overuse of Policy and Custom Claims: A View From One Trench*, 48 DEPAUL L. REV. 723, 734–35 (1999).

District courts, municipal defendants, and even plaintiffs have incentives to minimize duplication of effort in § 1983 cases that combine claims against individual public officials and a municipal defendant. The stipulation and stay of the *Monell* suit in this case achieved the goal of avoiding unnecessary complexity and effort. But district courts cannot prevent plaintiffs from pursuing potentially viable *Monell* claims that seek additional equitable relief or are distinct from the claims against individual defendants. The procedures used in this case

prevented a fair test of Swanigan's *Monell* theories, and that necessitates a remand.

Recall that the *Monell* suit was stayed from the start. No responsive pleading or motion to dismiss had been filed. Swanigan was simply asking to resuscitate the suit, and under Rule 15(a)(1)(B), once the City filed a responsive pleading or motion to dismiss, Swanigan was entitled to amend his complaint to flesh out his original claims or attempt to cure any jurisdictional or legal defects.

Indeed, whether to allow an amendment was out of the court's hands entirely. As amended in 2009, Rule 15 provides as follows:

> **(a) Amendments Before Trial.**
>
> > **(1)** *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:
> >
> > > **(A)** 21 days after serving it, or
> > >
> > > **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

FED. R. CIV. P. 15(a)(1) (2009). Because no responsive pleading or motion to dismiss had been filed, the 21-day clock under Rule 15(a)(1)(B) never started and Swanigan retained the right

to amend his complaint.[7] The district court voided that right by dismissing the *Monell* suit prematurely. After learning that Swanigan wanted to amend his complaint, the district court should have lifted the stay and waited for the amended complaint before evaluating any jurisdictional impediments to hearing the case.

We do not doubt that Swanigan's *Monell* claim faces jurisdictional and substantive legal barriers. Principles of double recovery may prevent him from recovering damages to the extent that his injuries are already covered by his successful claim in the earlier suit. He may not be able to establish standing to sue for injunctive relief. But the time to evaluate any jurisdictional or legal impediments to the *Monell* suit is *after* Swanigan has amended his complaint, as Rule 15(a)(1)(B) entitles him to do.

---

[7] The City argues that its memorandum in opposition to Swanigan's motion to lift the stay was a "responsive pleading" and that Swanigan therefore lost his right to amend under Rule 15(a)(1)(B). This argument is frivolous. Rule 7 lists the papers that qualify as "pleadings," *see* FED. R. CIV. P. 7(a), and the City's filing is not on the list. Simply put, the 21-day automatic amendment period under Rule 15(a)(1)(B) was never triggered here. The district court stayed all proceedings in the *Monell* suit, and the City's memorandum in opposition to Swanigan's motion to lift the stay was not an answer, a motion to dismiss, or anything other than what it claimed to be.

The City also suggests that Swanigan's complaint in the *Monell* Suit was functionally a fourth amended complaint in the earlier suit because the two cases were "consolidated." Whatever "consolidated" might mean in the context of this case, we think it clear that the consolidation didn't completely merge the cases. Both cases maintained separate docket numbers and were disposed of by separate judgments at separate times.

For all the foregoing reasons, the district court erred in dismissing the *Monell* suit. Accordingly, we VACATE the judgment and REMAND with instructions to grant Swanigan's motion to lift the stay and accept an amended complaint consistent with Rule 15(a)(1)(B).