# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 02-4271 & 02-4355

DEBORAH PETERSEN,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

BYRON GIBSON, Officer,

*Defendant-Appellant, Cross-Appellee.*

_____

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 4123—**James B. Zagel**, *Judge.*

_____

ARGUED NOVEMBER 4, 2003—DECIDED JUNE 16, 2004

_____

Before EASTERBROOK, ROVNER, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* It is rare that a trip to the hair salon leads to a date in federal appellate court, but that was the unfortunate sequel to Deborah Petersen's hair appointment at the Mario Tricoci Salon in Bloomingdale's Stratford Square Mall on June 13, 1995. Ms. Petersen, a regular customer of the salon, had an appointment to get her hair colored. All did not go as planned, however, and after three hours and two attempts to correct a botched coloring job,

Petersen was left under a hair dryer while her stylist went to lunch. When the treatment began to burn her scalp and her stylist was nowhere to be found, Petersen—foils still in her hair—left the salon without paying.

The salon employees then contacted the Bloomingdale police, who dispatched Officer Gibson to the scene. He contacted Petersen and she returned to the store. Hours of discussions ensued, in which Petersen offered to pay part of the bill and the salon refused to accept less than full payment, and culminated in Gibson arresting Petersen and detaining her at the police station for two hours. The salon pursued her prosecution for seven months, at which time the state *nolle prosequied* her case. Petersen then sued Gibson, the salon, its employees and others. Her claims included false arrest and wrongful detention claims against Gibson under 42 U.S.C. § 1983, a conspiracy claim against all defendants; and malicious prosecution, battery and negligence claims against defendant Mario Tricoci Salon-Bloomingdale and some of its employees.

Following unsuccessful settlement efforts, the case proceeded to trial. The jury was instructed, if it found liability, to award compensatory damages in an amount that would compensate for all of the plaintiff's damages caused by the defendant. It was further instructed, however, that it could award nominal damages if it found liability but no damages as a result. The jury found that Gibson violated Petersen's constitutional rights by wrongly arresting and detaining her, that the salon was liable for malicious prosecution, and that there was no conspiracy. The jury returned a verdict of $40,000.00 in compensatory damages and $10,000.00 in punitive damages against the salon, and a $1.00 nominal damage award against Gibson. Petersen then moved for a new trial on the damages with respect to Gibson, arguing that the court erred in giving the nominal damages instruction. In granting the motion, the court first stated that it provided the instruction because it believed that a reason-

able jury could have found that Gibson was not the proximate cause of the substantial part of plaintiff's damages. Dist. ct. order 1/10/02. The court further noted that there was evidence that the length of the detention was attributable to the salon defendants rather than Gibson. *Id.* In fact, the court declared that if the jury had returned a $1 verdict in the absence of the nominal damages instruction, the court would have let it stand. *Id.* Nevertheless, because there was "evidence of actual, provable injury that a reasonable jury could have attributed to Gibson," the court held that the better approach would have been to instruct the jury to assess damages in whatever amount it believed would compensate plaintiff for her injury. *Id.*

Faced with a new trial on the damages relating to Gibson, the parties reached a settlement in which Gibson paid $10,000.00. Petersen then sought attorney's fees against Gibson under 42 U.S.C. § 1988. In determining that fees were proper, the district court considered the tangible benefit of the $10,000 settlement, the success of the claims against the salon, and the public benefit of the action in addressing "the rarely considered but socially important sphere of the use of police power to resolve the complaints of merchants and service providers against their own customers." Dist. ct. order 12/05/02. The court then awarded $288,087.25 in fees and $20,840.03 in costs, for a total award of $308,927.28.

The only issue on appeal concerns the propriety of that award of attorney's fees and costs. Gibson contends that Petersen was not a prevailing party and is therefore not entitled to fees and costs, that any victory is merely technical or *de minimis* and hence an award is inappropriate, and that the amount of fees and costs is excessive even if an award was proper. Petersen has cross-appealed contending that the district court erred in reducing the hourly rate charged by her attorneys.

The pivotal issue in resolving this appeal is whether Petersen is a prevailing party under § 1988. The term "prevailing party" has a narrow legal definition that may seem counter-intuitive to one who believes the party who "succeeds" is necessarily one who "prevails." As courts have made clear, "a plaintiff must obtain formal judicial relief, and not merely 'success,' in order to be deemed a prevailing . . . party . . . ." *Crabill v. Trans Union*, 259 F.3d 662, 667 (7th Cir. 2001); *see also Hewitt v. Helms*, 482 U.S. 755, 762 (1987).

The Supreme Court has held that a prevailing party is one who has been awarded some relief by a court, as through an enforceable judgment on the merits or a court-ordered consent decree. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 603-04 (2001); *Texas State Teachers Assoc. v. Garland Ind. School Dist.*, 489 U.S. 782, 792 (1989) (at a minimum plaintiff must receive some relief on his claim before he can be said to prevail); *Oil, Chemical, and Atomic Workers Intl. Union, AFL-CIO v. Dept. of Energy*, 288 F.3d 452, 457 (D.C. Cir. 2002) (to be eligible for attorney's fees, FOIA plaintiffs must have been awarded some relief by a court). The relief requirement emphasizes the practical impact of the lawsuit, and the Supreme Court has repeatedly held that the relief must be real in order to qualify for fees. *Farrar v. Hobby*, 506 U.S. 103, 110-12 (1992); *Buckhannon*, 532 U.S. at 641 n.13 (Ginsburg, J., dissenting) and cases cited therein. For instance, in *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988), the Court held that a plaintiff who obtains a declaratory judgment but obtains no real relief whatsoever is not a prevailing party. *See also Hewitt*, 482 U.S. at 761 (judicial statement that plaintiff's rights were violated does not affect the relationship between the plaintiff and the defendant; to be a prevailing party, plaintiff must gain relief of substance). Furthermore, the Supreme Court has emphasized that the relief is actual when it changes the legal relationship between the parties. That is because

> [i]n all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant.

[emphasis in original] *Hewitt*, 482 U.S. at 761. The mere moral satisfaction of being wronged is insufficient to trigger prevailing party status. *Id.* at 762; *Cady v. City of Chicago*, 43 F.3d 326, 330 (7th Cir. 1994) (holding that unless plaintiff "can point to a direct benefit or redressed grievance other than the 'psychic satisfaction' of ending 'invidious discrimination,' he does not emerge as a prevailing party"); *see also Richardson v. Continental Grain Co.*, 336 F.3d 1103, 1106 (9th Cir. 2003) (although plaintiff succeeded on a legal issue, attorney's fees unavailable because no actual relief obtained, "only the possibility of future relief").

Therefore, in determining whether Petersen has prevailed, we must examine the practical impact of the judgment. The only judgment here is the one entered after the trial. That judgment originally awarded Petersen nominal damages, which would have been sufficient under *Farrar* to obtain prevailing party status, but not necessarily to obtain fees. 506 U.S. at 115 (holding that nominal damages are sufficient to confer prevailing party status but noting that "[w]hen a plaintiff recovers only nominal damages because of failure to prove an essential element of his claim for monetary relief . . . the only reasonable fee is usually no fee at all."). That damage award, however, was vacated on Petersen's motion, and the settlement followed. Therefore, the only judgment in this case is a determination that Petersen's rights were violated. As the Supreme Court noted in *Buckhannon*, however, attorney's fees are not available where plaintiff has "acquired a judicial pronouncement that the defendant has violated the Constitution

unaccompanied by '*judicial* relief.'" [emphasis in original] 532 U.S. at 606; *Thomas v. National Science Foundation*, 330 F.3d 486, 488 (D.C. Cir. 2003) (quoting *Buckhannon* and holding that attorney's fees are unavailable where the court order declared that the disputed assessment was an unconstitutional tax, but the plaintiffs did not obtain any concrete relief). It is the settlement, not the judgment of the court, that obtained the practical relief sought by Petersen, and therefore the judgment cannot provide a basis for prevailing party status. *See Rhodes*, 488 U.S. at 4 (a judgment will constitute relief for purposes of § 1988 only if it affects the behavior of the defendant toward the plaintiff).

The next question, then, is whether Petersen is a prevailing party not because of the judgment, but because she obtained a settlement which indeed gave her practical relief. Approximately six months before this settlement was negotiated, the Supreme Court answered that question in *Buckhannon*. Prior to *Buckhannon*, most circuit courts held that a party prevailed if their lawsuit was a "catalyst" for obtaining the desired relief, as when the lawsuit brought about a voluntary change in the defendant's conduct in a settlement. *Buckhannon*, however, rejected that theory, and held that in order to prevail for purposes of attorney's fees the party must obtain a "judicially-sanctioned change in the legal relationship of the parties. . . . A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." 532 U.S. at 605. The Court distinguished private settlements from consent decrees, stating that the former "do not entail the judicial approval and oversight involved in consent decrees" and noting that federal courts will often lack jurisdiction to enforce a private settlement unless the terms of the agreement are incorporated into the order of dismissal. *Id.* at 604 n.7. One factor in the Court's decision is that a fee request

should not spawn a second round of major litigation. *Id.* at 609-10. Under the catalyst theory, however, that was often the result, because courts had to analyze the defendant's subjective motivations to determine whether the change in conduct was attributable to the merits of the case rather than to another cause or to the desire to avoid the expense of litigation. *Id.*

Since *Buckhannon*, many circuits have attempted to delineate the circumstances in which a settlement has a sufficient judicial *imprimatur* to entitle the plaintiff to fees. Many, including this court, have held that a settlement short of a consent decree may qualify if, for instance, the terms of the settlement were incorporated into the dismissal order and the order was signed by the court rather than the parties, or the order provided that the court would retain jurisdiction to enforce the terms of the settlement. *See T.D. v. LaGrange School Dist. No. 102*, 349 F.3d 469, 478-79 (7th Cir. 2003); *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003) and cases cited therein; *Roberson v. Guiliani*, 346 F.3d 75, 82-83 (2d Cir. 2003). Correspondingly, we have recognized that mere judicial involvement in the settlement is not enough; "[t]here must be some official judicial approval of the settlement and some continuing judicial oversight." *T.D.*, 349 F.3d at 479. We need not concern ourselves here with the precise boundaries between a settlement that meets the prevailing party definition and one that falls short, however, because the settlement in this case clearly falls on the short side. There is in fact no order that we can find in the record, and none provided by the parties, concerning the settlement at all, and thus no judicial *imprimatur* whatsoever under *Buckhannon. See Doe v. Boston Public Schools*, 358 F.3d 20, 24 (1st Cir. 2004) (noting the Supreme Court's "unambiguous rejection of private settlement as sufficient grounds for 'prevailing party' status"). Because Petersen received no relief from the judgment of the court, and because the

settlement was not a "judicially sanctioned" change in the legal relationship of the parties, Petersen was not a prevailing party under § 1988, and is not entitled to attorney's fees. It follows, of course, that Petersen cannot succeed on her cross-appeal challenging the district court's reduction in the hourly rate for her attorneys.

We note that this case is a difficult one because of the timing—given that the award of nominal damages would have rendered her a prevailing party—but timing is often the difference between prevailing party status and no fees at all especially in the post-*Buckhannon* era. In fact, this case reflects the difficulties that *Buckhannon* sought to avoid. Although nominal damages would have qualified Petersen as a prevailing party, it also would have made an award of fees unlikely because the success was so minimal. The district court and Petersen rely on the $10,000 settlement, not the prior nominal damage award, to justify the substantial fees here. But although Petersen would characterize the settlement as a reflection of the damages actually sustained, Gibson argues that it was a nuisance settlement to avoid the expense of a second trial on damages. The jury findings do not resolve the issue because the jury found liability but also awarded only nominal damages which, under the jury instructions, it was only to do if it first found no actual damages. If a jury in a second damage trial was to make findings consistent with the first jury, then Petersen's damage award would be zero. In any case, this is precisely the sort of secondary dispute that the Supreme Court wished to avoid, and that is rendered irrelevant under the Court's rejection of the catalyst theory and its requirement of a judicial *imprimatur* on a settlement in order for it to be a basis for prevailing party status.

One claim yet remains—that of costs. Gibson challenges the award of $20,840.03 in costs to Petersen, claiming that costs should not have been awarded at all, or at least not in that amount. Although Gibson, here as in the district court,

challenges categories of costs separately, the district court did not address the costs individually and mentions costs only in its conclusion, awarding them in the amount of $20,840.03. That makes review of that discretionary award problematic. Moreover, we have determined in this appeal that Petersen is not a prevailing party for purposes of attorney's fees under § 1988. Because costs are available to "prevailing" parties, the district court must consider whether that term has a different meaning in the context of costs as opposed to attorney's fees. The Supreme Court suggested as much in *Buckhannon*, and in other contexts has recognized that the analysis of costs may differ from that of fees. *Buckhannon*, 532 U.S. at 606 n.8; *see also Maher v. Gagne*, 448 U.S. 122, 130-31 & n.14 (1980) (discussing impact of Eleventh Amendment on fee awards, and noting that the Court has never viewed the Eleventh Amendment as barring award of costs),and *Mother and Father v. Cassidy*, 338 F.3d 704, 710 (7th Cir. 2003) (discussing strong presumption that prevailing party will recover costs, and noting that attorney's fees decisions are not necessarily analogous because there is no parallel presumption). The parties, however, do not distinguish between costs and fees in their briefing of whether Petersen is a prevailing party, with Gibson merely arguing that the award of costs is inappropriate if Petersen is not a prevailing party for fees purposes. The issue would benefit from briefing by the parties in the district court, and if the court determines on remand that costs should still be awarded, then the court should address the specific objections raised by Gibson as to each category of costs so as to facilitate effective review by this court in the case of a subsequent appeal.

The decision of the district court awarding $288,087.25 in attorney's fees is REVERSED, the award of $20,840.03 in costs is VACATED, and the case REMANDED for further proceedings consistent with this opinion.

**A true Copy:**

     **Teste:**

                                  _____

                                  *Clerk of the United States Court of*
                                    *Appeals for the Seventh Circuit*