**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 26, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

XLEAR, INC., a Utah corporation,

    Plaintiff - Appellant,

v.

                            No. 17-4126

FOCUS NUTRITION, LLC, a Utah limited
liability company,

    Defendant - Appellee.

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:16-CV-00643-DB)**
_____

Timothy B. Smith (Kenneth A. Okazaki and Taryn N. Evans with him on the briefs),
Jones Waldo Holbrook & McDonough, P.C., Salt Lake City, Utah, for Plaintiff -
Appellant.

Matthew A. Steward (Shannon K. Zollinger with him on the brief), Clyde Snow &
Sessions, P.C., Salt Lake City, Utah, for Defendant - Appellee.
_____

Before **MATHESON**, **McHUGH**, and **EID**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

    Xlear, Inc. and Focus Nutrition, LLC are both in the business of selling

sweeteners that use the sugar alcohol xylitol. Xlear filed a complaint raising a trade

dress infringement claim under the Lanham Act, a claim under the Utah Truth in Advertising Act (UTIAA), and a claim under the common law for unfair competition. The claims all alleged that Focus Nutrition copied the packaging Xlear used for one of its sweetener products. Focus Nutrition moved to dismiss Xlear's Lanham Act claim. At a hearing on Focus Nutrition's motion to dismiss, the district court judge made several comments questioning the validity of Xlear's Lanham Act claim but, ultimately, denied the motion. Following the hearing, the parties, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), stipulated to the dismissal of all claims with prejudice. Under the stipulation, the parties reserved the right to seek attorneys' fees and Focus Nutrition exercised its right by filing a motion under Federal Rule of Civil Procedure 54 to recover its fees under the Lanham Act and the UTIAA. The district court concluded that Focus Nutrition was a prevailing party under both the Lanham Act and the UTIAA, and that Focus Nutrition was entitled to all of its requested fees.

On appeal, Xlear raises five challenges to the district court's order. We reverse the district court's award of attorneys' fees under the Lanham Act because Focus Nutrition is not a prevailing party under federal law. As to the UTIAA, we vacate the district court's award of attorneys' fees and remand for further proceedings to permit the district court to analyze the factors governing prevailing party status under Utah law and, if the court concludes Focus Nutrition is a prevailing party under the UTIAA, to determine what portion of the requested fees Focus Nutrition incurred in defense of the UTIAA claim and the reasonableness of the requested fees.

2

# I. BACKGROUND

Xlear and Focus Nutrition both sell sweeteners containing the sugar alcohol xylitol. According to Xlear's complaint, several former employees of Xlear work for Focus Nutrition. Xlear further alleged that when Focus Nutrition struggled to sell its sweetener in a blue box, Focus Nutrition changed its packaging to resemble the packaging used by Xlear. The three-count complaint filed by Xlear alleged (1) trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a); (2) a violation of the UTIAA, Utah Code Ann. § 13–11a–3; and (3) common law unfair competition. Focus Nutrition filed an answer to the complaint, defending the action on the grounds that Xlear's packaging and trade dress were not distinctive and that Focus Nutrition's packaging was not likely to confuse consumers. Focus Nutrition also raised a counterclaim, in which it sought a "declaratory judgment of non-infringement and unenforceability" relative to whether Xlear's packaging constituted a protectable trade dress. App'x at 45–46.

Focus Nutrition moved, under Federal Rule of Civil Procedure 12(c), to dismiss Xlear's Lanham Act claim on the pleadings. Focus Nutrition's Rule 12(c) motion, however, did not seek dismissal of Xlear's UTIAA claim or Xlear's common law unfair competition claim. The district court convened a hearing on the Rule 12(c) motion. By the hearing date, Xlear had not conducted any discovery or submitted any initial disclosures required by Federal Rule of Civil Procedure 26(a)(1). At the hearing, Focus Nutrition presented the district court with the packaging used by several of Focus Nutrition's and Xlear's competitors. Viewing the display, the

3

district court judge expressed skepticism about the validity of Xlear's allegations and Xlear's ability to produce evidence in support of its Lanham Act claim. Relevant to Focus Nutrition's argument for recovering its attorneys' fees, the district court judge made three statements:

- "I have had dozens of trade dress cases through the years . . . it just seems as weak a case as I can imagine from a company that is upset that some former employees went out and did exactly what it seems like a lot of other companies are doing with this same Xylitol product and artificial sweeteners." *Id.* at 107.

- "[I]t wouldn't be hard for me today to say that no reasonable jury is going to find trade dress infringement based on the allegations . . . and a lack of facts on your side, and that is why I asked what you're planning to do in discovery." *Id.* at 109.

- "It is a little hard to believe that there are facts to support [the allegation that customers associate specific packaging with Xlear's products] when we just look at this display [of all the sweetener companies' packaging] here on the table." *Id.* at 110.

Ultimately, however, the Rule 12(c) nature of the proceeding compelled the district court to focus on the pleadings and deny the motion.

Following the hearing, the parties engaged in settlement discussions, which culminated in a stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).[1] Under the stipulation of dismissal, all three of Xlear's claims, as well as Focus Nutrition's counterclaim, were dismissed with prejudice but the parties reserved the right to seek attorneys' fees. In accord with the stipulation of dismissal, the Clerk of Court terminated the case.

---

[1] The parties filed the stipulation after the deadline for conducting fact discovery. Although Xlear represented at the hearing on Focus Nutrition's Rule 12(c) motion that it would engage in discovery by conducting depositions, it never did so.

4

Within fourteen days of the entry of the stipulation of dismissal, Focus Nutrition filed a Federal Rule of Civil Procedure 54 motion seeking $26,674 in attorneys' fees. In its Rule 54 motion, Focus Nutrition argued that it was entitled to recover its attorneys' fees under both the Lanham Act and the UTIAA. Focus Nutrition supported the reasonableness of the requested attorneys' fees through an affidavit from lead counsel and a one-page billing record. The affidavit summarized the parties' conduct during the litigation, provided information about Focus Nutrition's attorneys' hourly rates and experience, and identified six broad tasks performed by counsel during the litigation. The billing record provided a month-by-month accounting of the requested attorneys' fees but did not indicate how much time counsel spent on a given task and did not separate the requested fees by claim— i.e., how much was attributable to the defense of the Lanham Act claim, the defense of the UTIAA claim, the defense of the common law unfair competition claim, or the pursuit of the counterclaim. In response to the Rule 54 motion, Xlear argued, in part, that Focus Nutrition was not a prevailing party under either the Lanham Act or the UTIAA and that Focus Nutrition failed to submit sufficient evidence to permit the district court to assess the reasonableness of the requested fees. In reply, Focus Nutrition did not provide any additional evidence in support of the requested fees; instead, it argued that the affidavit and one-page billing record were sufficient to permit the court to assess the reasonableness of the requested fees.

The district court commenced its analysis of Focus Nutrition's Rule 54 motion by finding that Xlear (1) filed a cursory complaint; (2) failed to provide initial

5

disclosures as required by Federal Rule of Civil Procedure 26; (3) did not "conduct, respond to, or participate in any discovery to support its claims"; and (4) stipulated to the dismissal with prejudice after the fact discovery deadline and on the eve of Focus Nutrition filing a motion for summary judgment. *Id.* at 149–50. Relevant to our resolution of this appeal, the district court concluded that Focus Nutrition was a prevailing party under both the Lanham Act and the UTIAA. Without discussing Xlear's argument about the sufficiency of the evidence submitted by Focus Nutrition in support of the requested fees and without stating any findings relative to the reasonableness of the requested fees, the district court awarded Focus Nutrition all of its requested fees.

Xlear appeals the district court's award of attorneys' fees. On appeal, Xlear's arguments include: (1) a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii) does not produce a judgment for purposes of a Rule 54 motion; (2) Focus Nutrition was not a prevailing party for purposes of the Lanham Act; (3) the district court did not consider the factors governing the prevailing party analysis under Utah law for purposes of awarding fees under the UTIAA; (4) even if Focus Nutrition was a prevailing party under the UTIAA, Focus Nutrition would be entitled to recover only fees related to the UTIAA claim and not the Lanham Act claim, the common law unfair competition claim, or the counterclaim; and (5) Focus Nutrition did not submit sufficient evidence to permit the district court to determine the reasonableness of the requested fees. In response, Focus Nutrition defends the merits of the district court's award of attorneys' fees and argues that Xlear did not preserve its argument that a

6

Rule 41(a)(1)(A)(ii) stipulation of dismissal does not produce a judgment for purposes of a Rule 54 motion. After stating the standard of review, we address each of the above identified arguments.

## II. STANDARD OF REVIEW

Generally speaking, "[w]e review the decision to award attorney fees, and the amount awarded, for abuse of discretion." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000). "An abuse of discretion has been characterized as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 981 (10th Cir. 2012) (internal quotation marks omitted). A district court abuses its discretion if it commits legal error, relies on clearly erroneous factual findings, or issues a ruling without any rational evidentiary basis. *Dullmaier v. Xanterra Parks & Resorts*, 883 F.3d 1278, 1295 (10th Cir. 2018). Further, although a district court possesses broad discretion to award attorneys' fees, "[i]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "Such explanations must give us an adequate basis for review. And, in reaching their determinations district courts must follow the guidelines established by the Supreme Court and this court." *Id*. (internal quotation marks and citation omitted).

Although the overarching standard of review is for an abuse of discretion, "[w]e review the statutory interpretation or legal analysis that formed the basis of the

7

award de novo." *Malloy v. Monahan*, 73 F.3d 1012, 1017 (10th Cir. 1996). Whether a litigant is a "prevailing party" is a legal question we review de novo. *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1214 (10th Cir. 2010). Finally, although this appeal involves the review of an award of attorneys' fees under state law, the standard of review under which we review an award of fees is a procedural matter controlled by federal precedent. *See id.* at 1213 ("In reviewing state law awards of attorney's fees, . . . it has been our consistent practice to look to our own precedent on this purely procedural issue—*viz.*, the applicable standard of review.").

## III. DISCUSSION

### A. *Does a Fed. R. Civ. P. 41(a)(1)(A)(ii) Stipulation of Dismissal Produce a Judgment for Purposes of a Fed. R. Civ. P. 54 Motion?*

A motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 54 must:

(i)     be filed no later than 14 days after the *entry of judgment*;
(ii)    specify *the judgment* and the statute, rule, or other grounds entitling the movant to the award;
(iii)   state the amount sought or provide a fair estimate of it; and
(iv)    disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2)(B) (emphasis added). Based on the use of the word "judgment" in subclauses (i) and (ii), entry of a judgment is a prerequisite for a Rule 54 motion for attorneys' fees. Put another way, if there was no judgment, then a Rule

8

54 motion was not a proper mechanism by which Focus Nutrition could seek attorneys' fees.[2]

On appeal, Xlear contends that a Rule 41(a)(1)(A)(ii) stipulation of dismissal does not produce a judgment. In support of this contention, Xlear advances two distinct arguments: (1) we should extend the Supreme Court's recent holding in *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017), to conclude that where a voluntary stipulation of dismissal does not produce a final judgment for purposes of appellate jurisdiction, it also does not produce a judgment for purposes of a motion under Federal Rule of Civil Procedure 54; and (2) a stipulation of dismissal under Rule 41(a)(1)(A)(ii) is self-executing such that the district court never enters a physical judgment. In response, Focus Nutrition argues that Xlear failed to preserve this issue by not raising it in the district court but that, if we reach the issue, we should not extend *Microsoft* because it addressed a narrow issue specific to class action litigation. In reply, Xlear acknowledges it did not raise this issue below but contends that an exception to the preservation requirement exists because the Supreme Court decided *Microsoft* after Xlear filed its response to Focus Nutrition's Rule 54 motion. We start our analysis by considering Focus Nutrition's preservation argument.

---

[2] This is not to say that the lack of a judgment would have nullified Focus Nutrition's ability to act on the reservation in the stipulation to seek attorneys' fees. Attorneys' fees may have been recoverable under other provisions in the Federal Rules of Civil Procedure, such as Rule 37, or through the inherent powers of the federal district court to sanction a party, *see Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). Because of these other potential means for seeking attorneys' fees, we reject Focus Nutrition's suggestion that Xlear's entrance into the stipulation of dismissal estops Xlear from arguing there was no judgment for purposes of a Rule 54 motion for attorneys' fees.

9

## 1. Preservation

Generally, "[a]n issue is waived if it was not raised below in the district court." *Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1280 (10th Cir. 2003). "[W]e will relax the waiver rule when the issues involved are questions of law, the proper resolution of which are beyond reasonable doubt, and the failure to address the issues would result in a miscarriage of justice." *Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 592 n.3 (10th Cir. 1992) (internal quotation marks omitted). Separately, "an intervening change in the law permits appellate review of an issue to which a party did not object below." *Id.*

Considering each of Xlear's arguments in support of its contention that a Rule 41(a)(1)(A)(ii) stipulation does not produce a judgment for purposes of Rule 54 separately, we reach contrary conclusions on the issue of preservation. As Xlear's response to Focus Nutrition's Rule 54 motion preceded the Supreme Court's decision in *Microsoft*, appellate review of Xlear's argument under *Microsoft* is appropriate. This is particularly true where some district courts have recently applied *Microsoft* to hold that a Rule 41(a)(1)(A)(ii) stipulation of dismissal does not produce a judgment for purposes of a Rule 54 motion. *See Keith Mfg. Co. v. Butterfield*, 256 F. Supp. 3d 1123, 1128–30 (D. Or. 2017); *see also Physician's Surrogacy, Inc. v. German*, ___ F. Supp. 3d ___, 2018 WL 1876187, at *2 (S.D. Cal. Apr. 19, 2018) (relying on *Keith* to conclude that stipulation of dismissal did not produce judgment for purposes of Rule 54); *but see Killer Burger, Inc. v. Rock & Roll Chili Pit, Inc.*, 2018 WL 1156237, at *2 (D. Or. Mar. 5, 2018) (distinguishing *Keith* and rejecting application of *Microsoft*

10

to Rule 54 motion where Rule 41(a)(1)(A)(ii) stipulation of dismissal included reservation of parties' rights to seek attorneys' fees).

We, however, conclude that appellate review of Xlear's second argument—that a Rule 41(a)(1)(A)(ii) stipulation of dismissal is self-executing and does not result in a physical judgment—is not preserved or subject to an exception to the preservation requirement. As early as 2011, we concluded that "[a] stipulation of dismissal filed under Rule 41(a)(1)(A)(i) or (ii) is self-executing and immediately strips the district court of jurisdiction over the merits." *De Leon v. Marcos*, 659 F.3d 1276, 1283 (10th Cir. 2011). Furthermore, at the time Xlear filed its response to the Rule 54 motion, it was apparent from the docket that the district court did not enter a physical judgment. Thus, nothing prevented Xlear from arguing below that a Rule 41(a)(1)(A)(ii) stipulation of dismissal is self-executing and that there was no physical judgment for purposes of a Rule 54 motion. Accordingly, we decline to consider this argument for the first time on appeal.

## 2. *Microsoft* Does Not Apply Within the Context of a Rule 54 Motion

In *Microsoft*, the district court denied the putative class plaintiff's motion for class certification, a denial that is not a final judgment and does not otherwise permit for an appeal as of right. 137 S. Ct. at 1710–11. Instead of litigating his claims as an individual plaintiff and appealing the denial of his motion for class certification following a final judgment on his individual claims, the plaintiff stipulated to the dismissal of his action with prejudice but reserved the right to refile the action if the appellate court reversed the district court's adverse class certification decision. *Id.* at

11

1706–07, 1711. After the appellate court reversed the adverse class certification decision, Microsoft petitioned to the Supreme Court, arguing that the stipulation of dismissal was not a final decision capable of creating appellate jurisdiction under 28 U.S.C. § 1291. *See id.* at 1711–12. Focusing on the unique nature of class action litigation and that the voluntary dismissal tactic employed by the putative class plaintiff would allow plaintiffs to appeal immediately from adverse class certification decisions but not allow defendants the same appellate opportunity and could result in piecemeal appeals, the Supreme Court held that a voluntary dismissal within the context of a class action suit was not a "final decision" for purposes of appellate jurisdiction. *Id.* at 1707, 1713.

We read *Microsoft* as addressing the narrow situation where a hopeful class action plaintiff uses a stipulation of dismissal as a tactic to overcome the limitations placed on appellate jurisdiction by 28 U.S.C. § 1291.[3] Notably, a stipulated dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii) that reserves only the issue of attorneys' fees does not create any possibility of piecemeal litigation and cannot give rise to the plaintiff re-filing any of the dismissed claims. Nor is the stipulated dismissal in this case a tactic to turn an interlocutory order into a final judgment or to otherwise overcome a jurisdictional defect. Finally, the stipulation here does not have

---

[3] Our reading of *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017), is in accord with the reading of the Court of Appeals for the District of Columbia Circuit. *See In re Brewer*, 863 F.3d 861, 871 (D.C. Cir. 2017) (noting limited reach of holding in *Microsoft* because the decision was driven by the "questionable tactics" used by the putative class plaintiff in an effort to circumvent the rules governing appellate jurisdiction).

12

the effect of giving only one party the ability to appeal. Instead, the stipulation permitted both parties to seek attorneys' fees, from which a single appeal, by either party and limited to the issue of attorneys' fees, might follow. Accordingly, none of the concerns underlying the holding in *Microsoft* are present when parties enter into a Rule 41(a)(1)(A)(ii) stipulation of dismissal with prejudice that reserves only the issue of attorneys' fees. We therefore decline to read *Microsoft* as supporting the conclusion that a Rule 41(a)(1)(A)(ii) dismissal does not produce a judgment for purposes of a motion for attorneys' fees under Rule 54.

Having established that *Microsoft* does not preclude Focus Nutrition from seeking attorneys' fees through a Rule 54 motion, we proceed by analyzing the district court's determination that Focus Nutrition was entitled to recover $26,674 in attorneys' fees, first considering the award under the Lanham Act and then considering the award under the UTIAA.

### B.     *Attorneys' Fees Under the Lanham Act*

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Thus, a party seeking an award of attorneys' fees must demonstrate that (1) it is a "prevailing party" and (2) the case is "exceptional." Because Focus Nutrition is not a "prevailing party," we start and end our analysis on that matter without considering whether this case was "exceptional."

The Supreme Court has defined "prevailing party" as "a party in whose favor judgment is rendered, regardless of the amount of damages awarded." *Buckhannon*

13

*Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (quoting Black's Law Dictionary 1145 (7th ed. 1999)).[4] To meet this definition, a party must be "one who has been awarded some relief by the court" in that the court materially altered the legal relationship between the plaintiff and the defendant. *Id.* at 603–04. Thus, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605. *Buckhannon* identified two situations—"enforceable judgments on the merits and court-ordered consent decrees"—that involve sufficient judicial *imprimatur* to convey prevailing party status onto a litigant. *Id.* at 604; *see Sole v. Wyner*, 551 U.S. 74, 82 n.3 (2007) (identifying *Buckhannon* as holding that the term prevailing party "does not 'include a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct'" (quoting *Buckhannon*, 532 U.S. at 600)); *see also CRST Van Expedited Inc. v. EEOC*, 136 S. Ct. 1642, 1651–52 (2016) (concluding procedural-based judgment that terminated litigation in favor of

---

[4] Although *Buckhannon* involved a party seeking attorneys' fees pursuant to the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act, *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 601 (2001), the phrase "prevailing party" appears in multiple fee-shifting statutes and should be interpreted in a "consistent manner" across those statutes, *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016). Thus, while *Buckhannon* did not address a request for attorneys' fees under the Lanham Act, its teachings about the definition of the phrase "prevailing party" apply with full force to a request for attorneys' fees under the Lanham Act.

defendant qualified as judicial *imprimatur* to convey prevailing party status onto defendant).

For our part, we have had at least three occasions to apply *Buckhannon* to the question of whether a litigant was a prevailing party for purposes of recovering attorneys' fees. *See Biodiversity Conservation All. v. Stem*, 519 F.3d 1226 (10th Cir. 2008); *Bell v. Bd. of Cty. Comm'rs*, 451 F.3d 1097 (10th Cir. 2006); *see also Sanchez v. Bd. of E. N.M.*, 361 F. App'x 980 (10th Cir. 2010). In *Bell*, we concluded that a settlement was only capable of conveying prevailing party status onto a litigant if the settlement bore the hallmarks of a consent decree:

> if a court does not incorporate a private settlement into an order, does not sign or otherwise provide written approval of the settlement's terms, and does not retain jurisdiction to enforce performance of the obligations assumed by the settling parties, the settlement does not bear any of the marks of a consent decree and does not confer prevailing party status on the party whose claims have been compromised.

451 F.3d at 1103 (quotation marks omitted) (citing *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003); *Smyth v. Rivero*, 282 F.3d 268, 285 (4th Cir. 2002); *Smalbein ex rel. Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905–06 (11th Cir. 2003)). Further, a court's involvement in a settlement conference by assuming a quasi-mediator role and advising the parties of the strengths and weaknesses of their case is insufficient to satisfy the judicial *imprimatur* requirement for a litigant to obtain prevailing party status. *See id.*; *see also Sanchez*, 361 F. App'x at 984–85. Likewise, a clerk of court terminating a case following a stipulation of dismissal does not constitute judicial action or judicial *imprimatur* for purposes of the prevailing party analysis. *Bell*,

15

451 F.3d at 1104. And, the fact that a stipulation of dismissal reserves the issue of attorneys' fees and allows the district court to retain jurisdiction over that issue also does not qualify as judicial *imprimatur* relative to the dismissal of the action. *Sanchez*, 361 F. App'x at 983–84.

In *Biodiversity Conservation Alliance*, we rejected the contention that comments by a district court favoring the merits of one party's position over another party's position constitute sufficient judicial *imprimatur* to convey prevailing party status onto a litigant. 519 F.3d at 1230. Specifically, we stated that *Buckhannon*

> requires more than a mere judicial statement favoring one party. Instead, in order for a party to prevail, the court's statement must lend judicial teeth to the merits of the case. More specifically, a party is entitled to attorneys' fees *only if it could obtain a court order to enforce the merits of some portion of the claim it made in its suit*. . . .
>     . . . .
>
>     . . . Judicial *imprimatur*, of the sort required in *Buckhannon*, gives a plaintiff substance it can rely on in enforcing the merits of its case.

 *Id.* (emphasis added).

In an effort to establish that it is a prevailing party, Focus Nutrition relies on Xlear's decision to enter into the stipulation of dismissal with prejudice and the district court's comments during the hearing on its Rule 12(c) motion. The stipulation of dismissal in this case does not bear any attributes of a consent decree and did not permit the district court to retain jurisdiction to enforce any aspect of the dismissal relative to the merits of case. Instead, the stipulation of dismissal, by the fact that it was a stipulation entered into under Federal Rule of Civil Procedure 41(a)(1)(A)(ii),

16

did not permit the district court to take any action relative to the merits of Xlear's claims or Focus Nutrition's counterclaim. *See Smith v. Phillips*, 881 F.2d 902, 904 (10th Cir. 1989) ("A voluntary dismissal by stipulation under Rule 41(a)(1)[(A)](ii) is of right, cannot be conditioned by the court, and does not call for the exercise of any discretion on the part of the court. Once the stipulation is filed, the action on the merits is at an end." (citations and footnote omitted)). Further, the stipulation of dismissal resulted only in the Clerk of Court terminating the case. And we have already held that a clerk of court terminating a case after a settlement by the parties does not constitute sufficient judicial *imprimatur* for the prevailing party analysis. *Bell*, 451 F.3d at 1104.

We turn next to the comments by the district court judge at the hearing on the Rule 12(c) motion. While certainly favorable to Focus Nutrition's legal position because they signaled the district court was likely to grant a future motion for summary judgment by Focus Nutrition, the comments were not sufficient to allow Focus Nutrition to "obtain a court order to enforce the merits of some portion of the claim." *See Biodiversity Conservation All.*, 519 F.3d at 1230. In fact, the district court denied Focus Nutrition's Rule 12(c) motion. In so doing, the district court explicitly indicated that there was a possibility that Xlear could produce evidence to substantiate its claims and proceed past summary judgment. Specifically, the district court judge stated, "I suppose there is the possibility that facts will get revealed during this discovery disclosure window that would allow [Xlear] to avoid summary judgment." App'x at 115–16. Thus, while the district judge's comments about the

17

validity of Xlear's Lanham Act claim may have prompted Xlear to enter into meaningful settlement talks that culminated in the stipulation of dismissal with prejudice, these comments cannot be viewed as judicial action that altered the legal rights of either party.[5]

In summation, under *Buckhannon*, *Bell*, and *Biodiversity Conservation Alliance*, to establish that it was a prevailing party, a litigant must demonstrate the existence of judicial *imprimatur* by identifying judicial action that altered or modified the legal rights of the parties. Focus Nutrition cannot satisfy this requirement and, therefore, is not entitled to recover attorneys' fees under the Lanham Act. Therefore, we reverse the district court's award of attorneys' fees under the Lanham Act.

### C.     *Attorneys' Fees Under the UTIAA*

Focus Nutrition argues that even if it was not a prevailing party under federal law for purposes of the Lanham Act, it was a prevailing party under Utah law for purposes of

---

[5] Put another way, Focus Nutrition argues that because the district court's comments were the precipitating factor, or the catalyst, for Xlear engaging in settlement talks and entering into the stipulation of dismissal with prejudice, the comments qualify as judicial *imprimatur*. However, *Buckhannon* rejected the catalyst theory for determining if a litigant is a prevailing party and precluded courts from considering the "subjective motivations" of a party who voluntarily changed course during litigation when conducting the prevailing party analysis. *See Buckhannon*, 532 U.S. at 601; *see also Petersen v. Gibson*, 372 F.3d 862, 866 (7th Cir. 2004) (noting that catalyst theory necessitated evaluation of subjective motivations of the parties and *Buckhannon* rejected reliance on such as part of prevailing party analysis). Accordingly, faithful application of *Buckhannon* prevents us from considering what motivated Xlear to enter into the stipulation of dismissal and, instead, forces us to focus our analysis on the fact that Xlear's entrance into the stipulation of dismissal was voluntary and the filing of the stipulation of dismissal did not permit for or result in any approval or action by the district court relative to the merits of the case.

the UTIAA and that the UTIAA entitled it to recover its requested attorneys' fees of $26,674. For two independent reasons, we vacate the district court's award of attorneys' fees under the UTIAA and remand for further proceedings.

Under the UTIAA, "[t]he court shall award attorneys' fees to the prevailing party." Utah Code Ann. § 13–11a–4(2)(c). Because a provision of the UTIAA awards attorneys' fees to the prevailing party—an outcome-based reason for awarding fees that is part and parcel of the state law cause of action—the UTIAA fee award statute is substantive, and state law controls the ability to award Focus Nutrition fees stemming from its defense of Xlear's UTIAA claim. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (applying *Erie*[6] Doctrine to state law claims arising under supplemental jurisdiction); *see also Chieftain Royalty Co. v. Enervest Energy Institutional Fund XII–A, L.P.*, 888 F.3d 455, 460 (10th Cir. 2017) (state law governing attorneys' fees is substantive when it ties the recoverability of attorneys' fees to the "outcome of the litigation" or where the state-created right to recover attorneys' fees is "part and parcel of the cause of action over which we have [supplemental] jurisdiction" (internal quotation marks omitted)).

The Utah Supreme Court has adopted a "flexible," "reasoned," and "common-sense" approach to whether a litigant is a prevailing party. *Neff v. Neff*, 247 P.3d 380, 399, 400 (Utah 2011). This approach requires a "case-by-case evaluation" so as "to handle circumstances where both, or neither, parties may be considered to have prevailed." *Id.* at 398 (emphasis omitted). In employing this approach, a trial court should

---

[6] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

19

consider several factors, including "the language of the . . . statute that forms the basis for the attorney fees award, the number of claims brought by the parties, the importance of each of the claims relative to the entire litigation, and the amounts awarded on each claim." *Id.* at 398. The trial court may also consider whether interests of "justice and equity" weigh in favor or against an award of attorneys' fees. *See Hull v. Wilcock*, 285 P.3d 815, 830–31 (Utah Ct. App. 2012). Finally, under Utah law,

> a party seeking fees must allocate its fee request according to its underlying claims. Indeed, the party must categorize the time and fees expended for "(1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees."

*Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998) (quoting *Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 269–70 (Utah 1992)).

By incorrectly concluding that Focus Nutrition was a prevailing party under the Lanham Act, the district court never analyzed which of the requested fees stemmed from Focus Nutrition's defense of the UTIAA claim rather than the Lanham Act claim. Nor could the district court have attempted to perform this analysis where the affidavit and one-page billing record submitted by Focus Nutrition did not delineate time spent defending the UTIAA claim from time spent defending the Lanham Act claim and the common law unfair competition claim or time spent pursuing the counterclaim. That said, from the record before us, we know that Focus Nutrition's attorneys' fees relative to its Rule 12(c) motion are not recoverable under the UTIAA because the motion only sought dismissal of Xlear's Lanham Act claim. We also know that Focus Nutrition pursued a

20

counterclaim under the Lanham Act. Thus, attorneys' fees attributable to the preparation and prosecution of the counterclaim cannot be recovered under the UTIAA.[7] Even assuming temporarily that Focus Nutrition is a prevailing party under Utah law for purposes of Xlear's UTIAA claim, therefore, would not permit an award of the full requested fees of $26,674. Accordingly, we must vacate the district court's award of attorneys' fees under the UTIAA and remand the matter to permit the district court to determine which of the requested fees are attributable to Focus Nutrition's defense of the UTIAA claim rather than to its defense of the non-UTIAA claims or to its pursuit of the counterclaim.

Apart from the fact that the UTIAA cannot support an award of the full requested fees, we conclude that the district court did not adequately state its findings with respect to the prevailing party analysis under Utah law. The entirety of the district court's analysis specific to Focus Nutrition's attorneys' fees request under the UTIAA reads:

> The Utah Truth in Advertising Act provides that "[c]osts shall be allowed to the prevailing party unless the court otherwise directs. The court shall award attorneys' fees to the prevailing party." U.C.A. § 13-11a-4(2)(c). Federal courts have followed Utah law in determining whether a party is the "prevailing party" under this statute. *See e.g. First Data Merch. Servs. Corp. v. SecurityMetrics Inc.*, 672 Fed. Appx. 229, 239 (4th Cir. 2016).
> Under Utah law, the Court looks to whether there was a prevailing party "within the context of the case as a whole" in awarding attorneys' fees. *See Neff v. Neff, 247 P.3d 380 (Utah 2011); First Data*, 672 Fed. Appx. at 239. The Court is to employ a "flexible and reasoned approach" and "take into consideration 'the significance of the net judgment in the case' and 'the amounts actually sought . . . balanc[ed] . . . proportionally

---

[7] Although we identify two examples of tasks that were part of the requested attorneys' fees and not incurred in defense of the UTIAA claim, other tasks not specifically identified here may also fall into this category.

21

with what was recovered.'" *Giles v. Mineral Res. Int'l, Inc.*, 320 P.3d 684, 687-88 (Utah App. 2014)(*quoting A.K. & R. Whipple Plumbing & Heating v. Guy*, 94 P.3d 270 (Utah 2004). "Courts should not ignore common sense when deciding which party prevailed." *Giles*, 320 P.3d at 687-88.

        The Court finds that Defendant prevailed within the context of this case as a whole. As discussed above, it succeeded in Plaintiff dismissing all of its claims with prejudice.

App'x at 151–52. This analysis, however, does not account for several of the factors identified in *Neff*, particularly the importance of the UTIAA claim relative to the entire litigation. *See* 247 P.3d at 398. The need for findings on this *Neff* factor is magnified by our earlier conclusion that Focus Nutrition did not prevail on the Lanham Act claim. And, where we must vacate the district court's award of attorneys' fees under the UTIAA because the UTIAA cannot support an award of all of Focus Nutrition's requested fees, we find it prudent, in light of the abuse of discretion standard that governs our review of attorneys' fees awards, to allow the district court to conduct a full analysis of the *Neff* factors in the first instance.

In summation, while it may be the case that Focus Nutrition is a prevailing party for purposes of the UTIAA, we vacate the district court's award of attorneys' fees under the UTIAA because the UTIAA cannot support an award of fees to Focus Nutrition for fees incurred in defense of the non-UTIAA claims or in pursuit of its counterclaim. Furthermore, on remand, the district court should analyze the factors identified in *Neff* to determine if Focus Nutrition remains a prevailing party under the UTIAA in light of our conclusion that Focus Nutrition is not a prevailing party under the Lanham Act.

22

### D.    *Reasonableness of Requested Attorneys' Fees*

Finally, because the matter is likely to arise again on remand, we discuss the parameters governing the issue of whether Focus Nutrition's requested attorneys' fees are reasonable. As noted earlier, in granting Focus Nutrition all of its requested fees, the district court did not explicitly comment on the reasonableness of the requested fees or address Xlear's argument that Focus Nutrition failed to submit adequate evidence to permit the district court to assess the reasonableness of the requested fees.

Because we have already determined that if Focus Nutrition is to recover any attorneys' fees it can only recover fees incurred in defense of the UTIAA claim, we start our analysis by considering the issue of whether federal or state law establishes the requirements for assessing the reasonableness of the requested fees. "The calculation of attorney fees is considered substantive law because 'the method of calculating a fee is an inherent part of the substantive right to the fee itself and reflects substantive state policy.'" *Chieftain Royalty Co.*, 888 F.3d at 462 (quoting Moore's Federal Practice § 124.07[3][b] (3d ed. 2011)). Thus, "[w]hen state law governs whether to award attorney fees . . . state law also governs how to calculate the amount." *Id.* at 461. And, "it is state substantive law that cabins the meaning of reasonable" with respect to the amount of fees awarded. *Id.* at 462 (emphasis omitted).

Under Utah law, "an award of attorney fees must be supported by evidence in the record." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). "Except in

23

the most simple cases, the evidence should include the hours spent on the case, the hourly rate or rates charged for those hours, and usual and customary rates for such work." *U.S.A. United Staffing All., LLC v. Workers' Comp. Fund*, 213 P.3d 20, 30 (Utah Ct. App. 2009) (quoting *Cottonwood Mall Co.*, 830 P.2d at 268). Additionally, the evidence submitted in support of the fee request should permit the district court to assess four questions central to the reasonableness inquiry:

1. What legal work was actually performed?
2. How much of the work performed was reasonably necessary to adequately prosecute [or defend] the matter?
3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?
4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

*Dixie State Bank*, 764 P.2d at 990 (footnotes omitted). "The appropriateness of the work actually performed and of the attorney's billing rate is evaluated before a reasonable fee is set." *Id.* "The trial court should . . . document its evaluation of the requested fees' reasonableness through findings of fact," which should (1) "mirror the requesting party's allocation of fees per claims," (2) "support any award issued," and (3) "detail the factors considered dispositive by the trial court in calculating the award." *Foote*, 962 P.2d at 55.

Additionally, "[a] party is . . . entitled only to those fees resulting from its principal cause of action for which there is a contractual (or statutory) obligation for attorney's fees." *Utah Farm Prod. Credit Ass'n v. Cox*, 627 P.2d 62, 66 (Utah 1981). Therefore, where a party incurs attorneys' fees prosecuting or defending multiple

24

claims within a single litigation and the party has a statutory right only to recover fees relative to one of the claims, the party must submit sufficient evidence to permit the district court to determine what portion of the fees were incurred prosecuting or defending the claim for which fee recovery is statutorily authorized. *Id.*; *see Paul Mueller Co. v. Cache Valley Dairy Ass'n*, 657 P.2d 1279, 1288 (Utah 1982) (affirming fee award because "the trial court . . . had sufficient information before it in the billing records to enable it to separate the counterclaim hours from those spent in defense of the main causes of action"); *see also Foote*, 962 P.2d at 55 (requiring party seeking fees to delineate requested fees based on successful claims, unsuccessful claims, and claims for which fee recovery is not authorized).

Now that Focus Nutrition's request for attorneys' fees rises and falls on the UTIAA, the particulars of Utah law relative to the calculation and reasonableness of the requested fees are essential to Focus Nutrition's ability to recover any of its initially-requested fees. On remand, and assuming the district court concludes Focus Nutrition is a prevailing party under the UTIAA, Focus Nutrition must submit additional evidence sufficient to permit the court to make the necessary findings relative to which fees were incurred in defense of the UTIAA claim and what a reasonable award of fees is relative to Focus Nutrition's defense of the UTIAA claim.

## IV.   CONCLUSION

We **REVERSE** the district court's award of attorneys' fees under the Lanham Act because Focus Nutrition cannot establish that it was a prevailing party under federal law. And we **VACATE** the district court's award of attorneys' fees under the

25

UTIAA because the UTIAA cannot support an award of attorneys' fees incurred by Focus Nutrition when defending non-UTIAA claims or when prosecuting its Lanham Act counterclaim and because the district court did not make findings relative to the prevailing party factors outlined in *Neff*. We **REMAND** this case to permit the district court to determine whether Focus Nutrition is a prevailing party under the UTIAA and, if so, to determine the reasonableness of Focus Nutrition's requested fee relative to its defense of the UTIAA claim.